### BARCLAYS PLC and BARCLAYS BANK PLC

#### WRITTEN RESOLUTIONS OF THE BOARDS

We, being all the members of the Boards of Barclays PLC and Barclays Bank PLC, acting pursuant to Article 115 of the Articles of Association of Barclays PLC and Article 113 of the Articles of Association of Barclays Bank PLC, hereby resolve as follows:

#### SETTLEMENT RELATING TO HISTORIC PAYMENT PRACTICES

#### INVOLVING UNITED STATES DOLLAR CROSS BORDER TRANSACTIONS

It is noted that:

1. As the Boards have been advised from time to time, Barclays has been conducting an internal review of its conduct with respect to United States dollar payments involving countries, persons and entities subject to United States Government economic sanctions.

2. Barclays has been reporting the results of this review to the FSA, the United States Department of Justice, the District Attorney of the County of New York, US Department of the Treasury's Office of Foreign Assets Control, the Board of Governors of the Federal Reserve System and the New York State Banking Department (together the "Authorities").

3. At the Board meetings on 24 June 2010 and 3 August 2010, the Boards received reports with respect to the progress of the internal review and discussions with the Authorities with respect to the matters covered by the review.

4. An agreement to conclude the investigations and resolve the allegations of misconduct arising from the investigations has been proposed. The proposed settlement is set forth in the following attached documents (together the "Settlement Documents"):

   - Deferred Prosecution Agreement between Barclays Bank PLC and the Asset Forfeiture and Money Laundering Section of the Criminal Division of the United States Department of Justice, plus the Factual Statement attached as Appendix A.

   - Deferred Prosecution Agreement between Barclays Bank PLC and the District Attorney of the County of New York, plus the Factual Statement attached as Appendix B.

   - Order to Cease and Desist Issued Upon Consent Pursuant to the Federal Deposit Insurance Act, as amended, by the Board of Governors of the Federal Reserve System and the New York State Banking Department; and

   - Settlement Agreement between Barclays Bank PLC and the US Department of the Treasury's Office of Foreign Assets Control.

Accordingly, having considered the contents of the Settlement Documents, IT IS HEREBY RESOLVED THAT:

1. The terms of the settlement as included in the Settlement Documents be agreed with the relevant Authorities;

2. The fines totalling USD 298 million be paid; and

3. Any one Director, the Company Secretary or the Group General Counsel (each an "Authorised Signatory") be severally authorised on behalf of the Board: (i) to approve any matters in relation to the Settlement; and (ii) to sign and deliver on behalf of the Company any document considered necessary or desirable in connection with the Settlement and/or any document approved by the Board with such amendments thereto as he may consider necessary or desirable.

..........................................
Marcus Agius

..........................................
David Booth

..........................................
Sir Richard Broadbent

..........................................
Alison Carnwath

..........................................
Leigh Clifford

..........................................
Fulvio Conti

..........................................
Robert E Diamond JR

..........................................
Simon Fraser

..........................................
Reuben Jeffery III

..........................................
Sir Andrew Likierman

..........................................
Chris Lucas

..........................................
Sir Michael Rake

..........................................
Sir John Sunderland

..........................................
John Varley

..........................................
Dambisa Moyo

3/8/2010
..........................................
Date

BARCLAYS PLC and BARCLAYS BANK PLC

WRITTEN RESOLUTIONS OF THE BOARDS

We, being all the members of the Boards of Barclays PLC and Barclays Bank PLC, acting pursuant to Article 115 of the Articles of Association of Barclays PLC and Article 113 of the Articles of Association of Barclays Bank PLC, hereby resolve as follows:

SETTLEMENT RELATING TO HISTORIC PAYMENT PRACTICES

INVOLVING UNITED STATES DOLLAR CROSS BORDER TRANSACTIONS

It is noted that:

1. As the Boards have been advised from time to time, Barclays has been conducting an internal review of its conduct with respect to United States dollar payments involving countries, persons and entities subject to United States Government economic sanctions.

2. Barclays has been reporting the results of this review to the FSA, the United States Department of Justice, the District Attorney of the County of New York, US Department of the Treasury's Office of Foreign Assets Control, the Board of Governors of the Federal Reserve System and the New York State Banking Department (together the "Authorities").

3. At the Board meetings on 24 June 2010 and 3 August 2010, the Boards received reports with respect to the progress of the internal review and discussions with the Authorities with respect to the matters covered by the review.

4. An agreement to conclude the investigations and resolve the allegations of misconduct arising from the investigations has been proposed. The proposed settlement is set forth in the following attached documents (together the "Settlement Documents"):

   • Deferred Prosecution Agreement between Barclays Bank PLC and the Asset Forfeiture and Money Laundering Section of the Criminal Division of the United States Department of Justice, plus the Factual Statement attached as Appendix A.

   • Deferred Prosecution Agreement between Barclays Bank PLC and the District Attorney of the County of New York, plus the Factual Statement attached as Appendix B.

   • Order to Cease and Desist Issued Upon Consent Pursuant to the Federal Deposit Insurance Act, as amended, by the Board of Governors of the Federal Reserve System and the New York State Banking Department; and

   • Settlement Agreement between Barclays Bank PLC and the US Department of the Treasury's Office of Foreign Assets Control.

Accordingly, having considered the contents of the Settlement Documents, IT IS HEREBY RESOLVED THAT:

1. The terms of the settlement as included in the Settlement Documents be agreed with the relevant Authorities;

2. The fines totalling USD 298 million be paid; and

3. Any one Director, the Company Secretary or the Group General Counsel (each an "Authorised Signatory") be severally authorised on behalf of the Board: (i) to approve any matters in relation to the Settlement; and (ii) to sign and deliver on behalf of the Company any document considered necessary or desirable in connection with the Settlement and/or any document approved by the Board with such amendments thereto as he may consider necessary or desirable.

.........................................   .........................................
Marcus Agius                                David Booth

.........................................   .........................................
Sir Richard Broadbent                       Alison Carnwath

.........................................   .........................................
Leigh Clifford                              Fulvio Conti

.........................................   .........................................
Robert E Diamond JR                         Simon Fraser

.........................................   .........................................
Reuben Jeffery III                          Sir Andrew Likierman

.........................................   .........................................
Chris Lucas                                 Sir Michael Rake

.........................................   X ...............................
Sir John Sunderland                         John Varley

.........................................
Dambisa Moyo

X ...3/8/2010...........
Date

BARCLAYS PLC and BARCLAYS BANK PLC

WRITTEN RESOLUTIONS OF THE BOARDS

We, being all the members of the Boards of Barclays PLC and Barclays Bank PLC, acting pursuant to Article 115 of the Articles of Association of Barclays PLC and Article 113 of the Articles of Association of Barclays Bank PLC, hereby resolve as follows:

SETTLEMENT RELATING TO HISTORIC PAYMENT PRACTICES

INVOLVING UNITED STATES DOLLAR CROSS BORDER TRANSACTIONS

It is noted that:

1. As the Boards have been advised from time to time, Barclays has been conducting an internal review of its conduct with respect to United States dollar payments involving countries, persons and entities subject to United States Government economic sanctions.

2. Barclays has been reporting the results of this review to the FSA, the United States Department of Justice, the District Attorney of the County of New York, US Department of the Treasury's Office of Foreign Assets Control, the Board of Governors of the Federal Reserve System and the New York State Banking Department (together the "Authorities").

3. At the Board meetings on 24 June 2010 and 3 August 2010, the Boards received reports with respect to the progress of the internal review and discussions with the Authorities with respect to the matters covered by the review.

4. An agreement to conclude the investigations and resolve the allegations of misconduct arising from the investigations has been proposed. The proposed settlement is set forth in the following attached documents (together the "Settlement Documents"):

   • Deferred Prosecution Agreement between Barclays Bank PLC and the Asset Forfeiture and Money Laundering Section of the Criminal Division of the United States Department of Justice, plus the Factual Statement attached as Appendix A.

   • Deferred Prosecution Agreement between Barclays Bank PLC and the District Attorney of the County of New York, plus the Factual Statement attached as Appendix B.

   • Order to Cease and Desist Issued Upon Consent Pursuant to the Federal Deposit Insurance Act, as amended, by the Board of Governors of the Federal Reserve System and the New York State Banking Department; and

   • Settlement Agreement between Barclays Bank PLC and the US Department of the Treasury's Office of Foreign Assets Control.

Accordingly, having considered the contents of the Settlement Documents, IT IS HEREBY RESOLVED THAT:

1.  The terms of the settlement as included in the Settlement Documents be agreed with the relevant Authorities;

2.  The fines totalling USD 298 million be paid; and

3.  Any one Director, the Company Secretary or the Group General Counsel (each an "Authorised Signatory") be severally authorised on behalf of the Board: (i) to approve any matters in relation to the Settlement; and (ii) to sign and deliver on behalf of the Company any document considered necessary or desirable in connection with the Settlement and/or any document approved by the Board with such amendments thereto as he may consider necessary or desirable.

........................................
Marcus Agius

........................................
David Booth

........................................
Sir Richard Broadbent

........................................
Alison Carnwath

........................................
Leigh Clifford

........................................
Fulvio Conti

........................................
Robert E Diamond JR

........................................
Simon Fraser

........................................
Reuben Jeffery III

........................................
Sir Andrew Likierman

........................................
Chris Lucas

........................................
Sir Michael Rake

........................................
Sir John Sunderland

........................................
John Varley

........................................
Dambisa Moyo

3/8/2010
........................................
Date

BARCLAYS PLC and BARCLAYS BANK PLC

WRITTEN RESOLUTIONS OF THE BOARDS

We, being all the members of the Boards of Barclays PLC and Barclays Bank PLC, acting pursuant to Article 115 of the Articles of Association of Barclays PLC and Article 113 of the Articles of Association of Barclays Bank PLC, hereby resolve as follows:

SETTLEMENT RELATING TO HISTORIC PAYMENT PRACTICES

INVOLVING UNITED STATES DOLLAR CROSS BORDER TRANSACTIONS

It is noted that:

1. As the Boards have been advised  from time to time, Barclays has been conducting an internal review of its conduct with respect to United States dollar payments involving countries, persons and entities subject to United States Government economic sanctions.

2. Barclays has been reporting the results of this review to the FSA, the United States Department of Justice, the District Attorney of the County of New York, US Department of the Treasury's Office of Foreign Assets Control, the Board of Governors of the Federal Reserve System and the New York State Banking Department (together the "Authorities") .

3. At the Board meetings on 24 June 2010 and 3 August 2010, the Boards received reports with respect to the progress of the internal review and discussions with the Authorities with respect to the matters covered by the review.

4. An agreement to conclude the investigations and resolve the allegations of misconduct arising from the investigations has been proposed. The proposed settlement is set forth in the following attached documents (together the "Settlement Documents"):

    • Deferred Prosecution Agreement between Barclays Bank PLC and the Asset Forfeiture and Money Laundering Section of the Criminal Division of the United States Department of Justice, plus the Factual Statement attached as Appendix A.

    • Deferred Prosecution Agreement between Barclays Bank PLC and the District Attorney of the County of New York, plus the Factual Statement attached as Appendix B.

    • Order to Cease and Desist Issued Upon Consent Pursuant to the Federal Deposit Insurance Act, as amended, by the Board of Governors of the Federal Reserve System and the New York State Banking Department; and

    • Settlement Agreement between Barclays Bank PLC and the US Department of the Treasury's Office of Foreign Assets Control.

Accordingly, having considered the contents of the Settlement Documents, IT IS HEREBY RESOLVED
THAT:

1.  The terms of the settlement as included in the Settlement Documents be agreed with the relevant
    Authorities;

2.  The fines totalling USD 298 million be paid; and

3.  Any one Director, the Company Secretary or the Group General Counsel (each an "Authorised
    Signatory") be severally authorised on behalf of the Board: (i) to approve any matters in relation to
    the Settlement; and (ii) to sign and deliver on behalf of the Company any document considered
    necessary or desirable in connection with the Settlement and/or any document approved by the
    Board with such amendments thereto as he may consider necessary or desirable.

........................................
Marcus Agius

........................................
David Booth

........................................
Sir Richard Broadbent

........................................
Alison Carnwath

........................................
Leigh Clifford

........................................
Fulvio Conti

........................................
Robert E Diamond JR

........................................
Simon Fraser

........................................
Reuben Jeffery III

........................................
Sir Andrew Likierman

........................................
Chris Lucas

........................................
Sir Michael Rake

........................................
Sir John Sunderland

........................................
John Varley

........................................
Dambisa Moyo  ·

........................................
Date

BARCLAYS PLC and BARCLAYS BANK PLC

WRITTEN RESOLUTIONS OF THE BOARDS

We, being all the members of the Boards of Barclays PLC and Barclays Bank PLC, acting pursuant to Article 115 of the Articles of Association of Barclays PLC and Article 113 of the Articles of Association of Barclays Bank PLC, hereby resolve as follows:

SETTLEMENT RELATING TO HISTORIC PAYMENT PRACTICES

INVOLVING UNITED STATES DOLLAR CROSS BORDER TRANSACTIONS

It is noted that:

1. As the Boards have been advised from time to time, Barclays has been conducting an internal review of its conduct with respect to United States dollar payments involving countries, persons and entities subject to United States Government economic sanctions.

2. Barclays has been reporting the results of this review to the FSA, the United States Department of Justice, the District Attorney of the County of New York, US Department of the Treasury's Office of Foreign Assets Control, the Board of Governors of the Federal Reserve System and the New York State Banking Department (together the "Authorities").

3. At the Board meetings on 24 June 2010 and 3 August 2010, the Boards received reports with respect to the progress of the internal review and discussions with the Authorities with respect to the matters covered by the review.

4. An agreement to conclude the investigations and resolve the allegations of misconduct arising from the investigations has been proposed. The proposed settlement is set forth in the following attached documents (together the "Settlement Documents"):

    • Deferred Prosecution Agreement between Barclays Bank PLC and the Asset Forfeiture and Money Laundering Section of the Criminal Division of the United States Department of Justice, plus the Factual Statement attached as Appendix A.

    • Deferred Prosecution Agreement between Barclays Bank PLC and the District Attorney of the County of New York, plus the Factual Statement attached as Appendix B.

    • Order to Cease and Desist Issued Upon Consent Pursuant to the Federal Deposit Insurance Act, as amended, by the Board of Governors of the Federal Reserve System and the New York State Banking Department; and

    • Settlement Agreement between Barclays Bank PLC and the US Department of the Treasury's Office of Foreign Assets Control.

Accordingly, having considered the contents of the Settlement Documents, IT IS HEREBY RESOLVED THAT:

1. The terms of the settlement as included in the Settlement Documents be agreed with the relevant Authorities;

2. The fines totalling USD 298 million be paid; and

3. Any one Director, the Company Secretary or the Group General Counsel (each an "Authorised Signatory") be severally authorised on behalf of the Board: (i) to approve any matters in relation to the Settlement; and (ii) to sign and deliver on behalf of the Company any document considered necessary or desirable in connection with the Settlement and/or any document approved by the Board with such amendments thereto as he may consider necessary or desirable.

...........................................
Marcus Agius

...........................................
David Booth

...........................................
Sir Richard Broadbent

...........................................
Alison Carnwath

...........................................
Leigh Clifford

...........................................
Fulvio Conti

...........................................
Robert E Diamond JR

...........................................
Simon Fraser

...........................................
Reuben Jeffery III

...........................................
Sir Andrew Likierman

...........................................
Chris Lucas

...........................................
Sir Michael Rake

...........................................
Sir John Sunderland

...........................................
John Varley

...........................................
Dambisa Moyo

...........................................
Date

BARCLAYS PLC and BARCLAYS BANK PLC

WRITTEN RESOLUTIONS OF THE BOARDS

We, being all the members of the Boards of Barclays PLC and Barclays Bank PLC, acting pursuant to Article 115 of the Articles of Association of Barclays PLC and Article 113 of the Articles of Association of Barclays Bank PLC, hereby resolve as follows:

SETTLEMENT RELATING TO HISTORIC PAYMENT PRACTICES

INVOLVING UNITED STATES DOLLAR CROSS BORDER TRANSACTIONS

It is noted that:

1. As the Boards have been advised  from time to time, Barclays has been conducting an internal review of its conduct with respect to United States dollar payments involving countries, persons and entities subject to United States Government economic sanctions.

2. Barclays has been reporting the results of this review to the FSA, the United States Department of Justice, the District Attorney of the County of New York, US Department of the Treasury's Office of Foreign Assets Control, the Board of Governors of the Federal Reserve System and the New York State Banking Department (together the "Authorities") .

3. At the Board meetings on 24 June 2010 and 3 August 2010, the Boards received reports with respect to the progress of the internal review and discussions with the Authorities with respect to the matters covered by the review.

4. An agreement to conclude the investigations and resolve the allegations of misconduct arising from the investigations has been proposed. The proposed settlement is set forth in the following attached documents (together the "Settlement Documents"):

    - Deferred Prosecution Agreement between Barclays Bank PLC and the Asset Forfeiture and Money Laundering Section of the Criminal Division of the United States Department of Justice, plus the Factual Statement attached as Appendix A.

    - Deferred Prosecution Agreement between Barclays Bank PLC and the District Attorney of the County of New York, plus the Factual Statement attached as Appendix B.

    - Order to Cease and Desist Issued Upon Consent Pursuant to the Federal Deposit Insurance Act, as amended, by the Board of Governors of the Federal Reserve System and the New York State Banking Department; and

    - Settlement Agreement between Barclays Bank PLC and the US Department of the Treasury's Office of Foreign Assets Control.

Accordingly, having considered the contents of the Settlement Documents, IT IS HEREBY RESOLVED THAT:

1. The terms of the settlement as included in the Settlement Documents be agreed with the relevant Authorities;

2. The fines totalling USD 298 million be paid; and

3. Any one Director, the Company Secretary or the Group General Counsel (each an "Authorised Signatory") be severally authorised on behalf of the Board: (i) to approve any matters in relation to the Settlement; and (ii) to sign and deliver on behalf of the Company any document considered necessary or desirable in connection with the Settlement and/or any document approved by the Board with such amendments thereto as he may consider necessary or desirable.

..........................................
Marcus Agius

..........................................
David Booth

..........................................
Sir Richard Broadbent

..........................................
Alison Carnwath

..........................................
Leigh Clifford

..........................................
Fulvio Conti

..........................................
Robert E Diamond JR

..........................................
Simon Fraser

..........................................
Reuben Jeffery III

..........................................
Sir Andrew Likierman

..........................................
Chris Lucas

..........................................
Sir Michael Rake

..........................................
Sir John Sunderland

..........................................
John Varley

..........................................
Dambisa Moyo

3 August 2010
Date

BARCLAYS PLC and BARCLAYS BANK PLC

WRITTEN RESOLUTIONS OF THE BOARDS

We, being all the members of the Boards of Barclays PLC and Barclays Bank PLC, acting pursuant to Article 115 of the Articles of Association of Barclays PLC and Article 113 of the Articles of Association of Barclays Bank PLC, hereby resolve as follows:

SETTLEMENT RELATING TO HISTORIC PAYMENT PRACTICES

INVOLVING UNITED STATES DOLLAR CROSS BORDER TRANSACTIONS

It is noted that:

1. As the Boards have been advised from time to time, Barclays has been conducting an internal review of its conduct with respect to United States dollar payments involving countries, persons and entities subject to United States Government economic sanctions.

2. Barclays has been reporting the results of this review to the FSA, the United States Department of Justice, the District Attorney of the County of New York, US Department of the Treasury's Office of Foreign Assets Control, the Board of Governors of the Federal Reserve System and the New York State Banking Department (together the "Authorities") .

3. At the Board meetings on 24 June 2010 and 3 August 2010, the Boards received reports with respect to the progress of the internal review and discussions with the Authorities with respect to the matters covered by the review.

4. An agreement to conclude the investigations and resolve the allegations of misconduct arising from the investigations has been proposed. The proposed settlement is set forth in the following attached documents (together the "Settlement Documents"):

   - Deferred Prosecution Agreement between Barclays Bank PLC and the Asset Forfeiture and Money Laundering Section of the Criminal Division of the United States Department of Justice, plus the Factual Statement attached as Appendix A.

   - Deferred Prosecution Agreement between Barclays Bank PLC and the District Attorney of the County of New York, plus the Factual Statement attached as Appendix B.

   - Order to Cease and Desist Issued Upon Consent Pursuant to the Federal Deposit Insurance Act, as amended, by the Board of Governors of the Federal Reserve System and the New York State Banking Department; and

   - Settlement Agreement between Barclays Bank PLC and the US Department of the Treasury's Office of Foreign Assets Control.

Accordingly, having considered the contents of the Settlement Documents, IT IS HEREBY RESOLVED THAT:

1. The terms of the settlement as included in the Settlement Documents be agreed with the relevant Authorities;

2. The fines totalling USD 298 million be paid; and

3. Any one Director, the Company Secretary or the Group General Counsel (each an "Authorised Signatory") be severally authorised on behalf of the Board: (i) to approve any matters in relation to the Settlement; and (ii) to sign and deliver on behalf of the Company any document considered necessary or desirable in connection with the Settlement and/or any document approved by the Board with such amendments thereto as he may consider necessary or desirable.

........................................
Marcus Agius

........................................
David Booth

........................................
Sir Richard Broadbent

........................................
Alison Carnwath

........................................
Leigh Clifford

........................................
Fulvio Conti

........................................
Robert E Diamond JR

........................................
Simon Fraser

........................................
Reuben Jeffery III

........................................
Sir Andrew Likierman

........................................
Chris Lucas

........................................
Sir Michael Rake

........................................
Sir John Sunderland

........................................
John Varley

........................................
Dambisa Moyo

.......02. 08. 10............
Date

BARCLAYS PLC and BARCLAYS BANK PLC

WRITTEN RESOLUTIONS OF THE BOARDS

We, being all the members of the Boards of Barclays PLC and Barclays Bank PLC, acting pursuant to Article 115 of the Articles of Association of Barclays PLC and Article 113 of the Articles of Association of Barclays Bank PLC, hereby resolve as follows:

SETTLEMENT RELATING TO HISTORIC PAYMENT PRACTICES

INVOLVING UNITED STATES DOLLAR CROSS BORDER TRANSACTIONS

It is noted that:

1. As the Boards have been advised from time to time, Barclays has been conducting an internal review of its conduct with respect to United States dollar payments involving countries, persons and entities subject to United States Government economic sanctions.

2. Barclays has been reporting the results of this review to the FSA, the United States Department of Justice, the District Attorney of the County of New York, US Department of the Treasury's Office of Foreign Assets Control, the Board of Governors of the Federal Reserve System and the New York State Banking Department (together the "Authorities") .

3. At the Board meetings on 24 June 2010 and 3 August 2010, the Boards received reports with respect to the progress of the internal review and discussions with the Authorities with respect to the matters covered by the review.

4. An agreement to conclude the investigations and resolve the allegations of misconduct arising from the investigations has been proposed. The proposed settlement is set forth in the following attached documents (together the "Settlement Documents"):

  • Deferred Prosecution Agreement between Barclays Bank PLC and the Asset Forfeiture and Money Laundering Section of the Criminal Division of the United States Department of Justice, plus the Factual Statement attached as Appendix A.

  • Deferred Prosecution Agreement between Barclays Bank PLC and the District Attorney of the County of New York, plus the Factual Statement attached as Appendix B.

  • Order to Cease and Desist Issued Upon Consent Pursuant to the Federal Deposit Insurance Act, as amended, by the Board of Governors of the Federal Reserve System and the New York State Banking Department; and

  • Settlement Agreement between Barclays Bank PLC and the US Department of the Treasury's Office of Foreign Assets Control.

Accordingly, having considered the contents of the Settlement Documents, IT IS HEREBY RESOLVED THAT:

1. The terms of the settlement as included in the Settlement Documents be agreed with the relevant Authorities;

2. The fines totalling USD 298 million be paid; and

3. Any one Director, the Company Secretary or the Group General Counsel (each an "Authorised Signatory") be severally authorised on behalf of the Board: (i) to approve any matters in relation to the Settlement; and (ii) to sign and deliver on behalf of the Company any document considered necessary or desirable in connection with the Settlement and/or any document approved by the Board with such amendments thereto as he may consider necessary or desirable.

..........................................
Marcus Agius

..........................................
David Booth

..........................................
Sir Richard Broadbent

..........................................
Alison Carnwath

..........................................
Leigh Clifford

..........................................
Fulvio Conti

..........................................
Robert E Diamond JR

..........................................
Simon Fraser

..........................................
Reuben Jeffery III

..........................................
Sir Andrew Likierman

..........................................
Chris Lucas

..........................................
Sir Michael Rake

..........................................
Sir John Sunderland

..........................................
John Varley

..........................................
Dambisa Moyo

3rd August 2010
Date

BARCLAYS PLC and BARCLAYS BANK PLC

WRITTEN RESOLUTIONS OF THE BOARDS

We, being all the members of the Boards of Barclays PLC and Barclays Bank PLC, acting pursuant to Article 115 of the Articles of Association of Barclays PLC and Article 113 of the Articles of Association of Barclays Bank PLC, hereby resolve as follows:

SETTLEMENT RELATING TO HISTORIC PAYMENT PRACTICES

INVOLVING UNITED STATES DOLLAR CROSS BORDER TRANSACTIONS

It is noted that:

1. As the Boards have been advised from time to time, Barclays has been conducting an internal review of its conduct with respect to United States dollar payments involving countries, persons and entities subject to United States Government economic sanctions.

2. Barclays has been reporting the results of this review to the FSA, the United States Department of Justice, the District Attorney of the County of New York, US Department of the Treasury's Office of Foreign Assets Control, the Board of Governors of the Federal Reserve System and the New York State Banking Department (together the "Authorities") .

3. At the Board meetings on 24 June 2010 and 3 August 2010, the Boards received reports with respect to the progress of the internal review and discussions with the Authorities with respect to the matters covered by the review.

4. An agreement to conclude the investigations and resolve the allegations of misconduct arising from the investigations has been proposed. The proposed settlement is set forth in the following attached documents (together the "Settlement Documents"):

   - Deferred Prosecution Agreement between Barclays Bank PLC and the Asset Forfeiture and Money Laundering Section of the Criminal Division of the United States Department of Justice, plus the Factual Statement attached as Appendix A.

   - Deferred Prosecution Agreement between Barclays Bank PLC and the District Attorney of the County of New York, plus the Factual Statement attached as Appendix B.

   - Order to Cease and Desist Issued Upon Consent Pursuant to the Federal Deposit Insurance Act, as amended, by the Board of Governors of the Federal Reserve System and the New York State Banking Department; and

   - Settlement Agreement between Barclays Bank PLC and the US Department of the Treasury's Office of Foreign Assets Control.

Accordingly, having considered the contents of the Settlement Documents, IT IS HEREBY RESOLVED THAT:

1. The terms of the settlement as included in the Settlement Documents be agreed with the relevant Authorities;

2. The fines totalling USD 298 million be paid; and

3. Any one Director, the Company Secretary or the Group General Counsel (each an "Authorised Signatory") be severally authorised on behalf of the Board: (i) to approve any matters in relation to the Settlement; and (ii) to sign and deliver on behalf of the Company any document considered necessary or desirable in connection with the Settlement and/or any document approved by the Board with such amendments thereto as he may consider necessary or desirable.

..........................................
Marcus Agius

..........................................
David Booth

..........................................
Sir Richard Broadbent

..........................................
Alison Carnwath

..........................................
Leigh Clifford

..........................................
Fulvio Conti

..........................................
Robert E Diamond JR

..........................................
Simon Fraser

..........................................
Reuben Jeffery III

..........................................
Sir Andrew Likierman

..........................................
Chris Lucas

..........................................
Sir Michael Rake

..........................................
Sir John Sunderland

..........................................
John Varley

..........................................
Dambisa Moyo

August 4, 2010
..........................................
Date

BARCLAYS PLC and BARCLAYS BANK PLC

WRITTEN RESOLUTIONS OF THE BOARDS

We, being all the members of the Boards of Barclays PLC and Barclays Bank PLC, acting pursuant to Article 115 of the Articles of Association of Barclays PLC and Article 113 of the Articles of Association of Barclays Bank PLC, hereby resolve as follows:

SETTLEMENT RELATING TO HISTORIC PAYMENT PRACTICES

INVOLVING UNITED STATES DOLLAR CROSS BORDER TRANSACTIONS

It is noted that:

1. As the Boards have been advised  from time to time, Barclays has been conducting an internal review of its conduct with respect to United States dollar payments involving countries, persons and entities subject to United States Government economic sanctions.

2. Barclays has been reporting the results of this review to the FSA, the United States Department of Justice, the District Attorney of the County of New York, US Department of the Treasury's Office of Foreign Assets Control, the Board of Governors of the Federal Reserve System and the New York State Banking Department (together the "Authorities").

3. At the Board meetings on 24 June 2010 and 3 August 2010, the Boards received reports with respect to the progress of the internal review and discussions with the Authorities with respect to the matters covered by the review.

4. An agreement to conclude the investigations and resolve the allegations of misconduct arising from the investigations has been proposed. The proposed settlement is set forth in the following attached documents (together the "Settlement Documents"):

   - Deferred Prosecution Agreement between Barclays Bank PLC and the Asset Forfeiture and Money Laundering Section of the Criminal Division of the United States Department of Justice, plus the Factual Statement attached as Appendix A.

   - Deferred Prosecution Agreement between Barclays Bank PLC and the District Attorney of the County of New York, plus the Factual Statement attached as Appendix B.

   - Order to Cease and Desist Issued Upon Consent Pursuant to the Federal Deposit Insurance Act, as amended, by the Board of Governors of the Federal Reserve System and the New York State Banking Department; and

   - Settlement Agreement between Barclays Bank PLC and the US Department of the Treasury's Office of Foreign Assets Control.

Accordingly, having considered the contents of the Settlement Documents, IT IS HEREBY RESOLVED THAT:

1. The terms of the settlement as included in the Settlement Documents be agreed with the relevant Authorities;

2. The fines totalling USD 298 million be paid; and

3. Any one Director, the Company Secretary or the Group General Counsel (each an "Authorised Signatory") be severally authorised on behalf of the Board: (i) to approve any matters in relation to the Settlement; and (ii) to sign and deliver on behalf of the Company any document considered necessary or desirable in connection with the Settlement and/or any document approved by the Board with such amendments thereto as he may consider necessary or desirable.

..........................................
Marcus Agius

..........................................
David Booth

..........................................
Sir Richard Broadbent

..........................................
Alison Carnwath

..........................................
Leigh Clifford

..........................................
Fulvio Conti

..........................................
Robert E Diamond JR

..........................................
Simon Fraser

..........................................
Reuben Jeffery III

..........................................
Sir Andrew Likierman

..........................................
Chris Lucas

..........................................
Sir Michael Rake

..........................................
Sir John Sunderland

..........................................
John Varley

..........................................
Dambisa Moyo     .

11 August 2010
..........................................
Date

BARCLAYS PLC and BARCLAYS BANK PLC

WRITTEN RESOLUTIONS OF THE BOARDS

We, being all the members of the Boards of Barclays PLC and Barclays Bank PLC, acting pursuant to Article 115 of the Articles of Association of Barclays PLC and Article 113 of the Articles of Association of Barclays Bank PLC, hereby resolve as follows:

SETTLEMENT RELATING TO HISTORIC PAYMENT PRACTICES

INVOLVING UNITED STATES DOLLAR CROSS BORDER TRANSACTIONS

It is noted that:

1. As the Boards have been advised from time to time, Barclays has been conducting an internal review of its conduct with respect to United States dollar payments involving countries, persons and entities subject to United States Government economic sanctions.

2. Barclays has been reporting the results of this review to the FSA, the United States Department of Justice, the District Attorney of the County of New York, US Department of the Treasury's Office of Foreign Assets Control, the Board of Governors of the Federal Reserve System and the New York State Banking Department (together the "Authorities").

3. At the Board meetings on 24 June 2010 and 3 August 2010, the Boards received reports with respect to the progress of the internal review and discussions with the Authorities with respect to the matters covered by the review.

4. An agreement to conclude the investigations and resolve the allegations of misconduct arising from the investigations has been proposed. The proposed settlement is set forth in the following attached documents (together the "Settlement Documents"):

    • Deferred Prosecution Agreement between Barclays Bank PLC and the Asset Forfeiture and Money Laundering Section of the Criminal Division of the United States Department of Justice, plus the Factual Statement attached as Appendix A.

    • Deferred Prosecution Agreement between Barclays Bank PLC and the District Attorney of the County of New York, plus the Factual Statement attached as Appendix B.

    • Order to Cease and Desist Issued Upon Consent Pursuant to the Federal Deposit Insurance Act, as amended, by the Board of Governors of the Federal Reserve System and the New York State Banking Department; and

    • Settlement Agreement between Barclays Bank PLC and the US Department of the Treasury's Office of Foreign Assets Control.

Accordingly, having considered the contents of the Settlement Documents, IT IS HEREBY RESOLVED THAT:

1. The terms of the settlement as included in the Settlement Documents be agreed with the relevant Authorities;

2. The fines totalling USD 298 million be paid; and

3. Any one Director, the Company Secretary or the Group General Counsel (each an "Authorised Signatory") be severally authorised on behalf of the Board: (i) to approve any matters in relation to the Settlement; and (ii) to sign and deliver on behalf of the Company any document considered necessary or desirable in connection with the Settlement and/or any document approved by the Board with such amendments thereto as he may consider necessary or desirable.

......................................
Marcus Agius

......................................
David Booth

......................................
Sir Richard Broadbent

......................................
Alison Carnwath

......................................
Leigh Clifford

......................................
Fulvio Conti

......................................
Robert E Diamond JR

......................................
Simon Fraser

......................................
Reuben Jeffery III

......................................
Sir Andrew Likierman

......................................
Chris Lucas

......................................
Sir Michael Rake

......................................
Sir John Sunderland

......................................
John Varley

......................................
Dambisa Moyo

$\frac{3}{8}/\frac{8}{2010}$
Date

BARCLAYS PLC and BARCLAYS BANK PLC

WRITTEN RESOLUTIONS OF THE BOARDS

We, being all the members of the Boards of Barclays PLC and Barclays Bank PLC, acting pursuant to Article 115 of the Articles of Association of Barclays PLC and Article 113 of the Articles of Association of Barclays Bank PLC, hereby resolve as follows:

SETTLEMENT RELATING TO HISTORIC PAYMENT PRACTICES

INVOLVING UNITED STATES DOLLAR CROSS BORDER TRANSACTIONS

It is noted that:

1. As the Boards have been advised from time to time, Barclays has been conducting an internal review of its conduct with respect to United States dollar payments involving countries, persons and entities subject to United States Government economic sanctions.

2. Barclays has been reporting the results of this review to the FSA, the United States Department of Justice, the District Attorney of the County of New York, US Department of the Treasury's Office of Foreign Assets Control, the Board of Governors of the Federal Reserve System and the New York State Banking Department (together the "Authorities").

3. At the Board meetings on 24 June 2010 and 3 August 2010, the Boards received reports with respect to the progress of the internal review and discussions with the Authorities with respect to the matters covered by the review.

4. An agreement to conclude the investigations and resolve the allegations of misconduct arising from the investigations has been proposed. The proposed settlement is set forth in the following attached documents (together the "Settlement Documents"):

    • Deferred Prosecution Agreement between Barclays Bank PLC and the Asset Forfeiture and Money Laundering Section of the Criminal Division of the United States Department of Justice, plus the Factual Statement attached as Appendix A.

    • Deferred Prosecution Agreement between Barclays Bank PLC and the District Attorney of the County of New York, plus the Factual Statement attached as Appendix B.

    • Order to Cease and Desist Issued Upon Consent Pursuant to the Federal Deposit Insurance Act, as amended, by the Board of Governors of the Federal Reserve System and the New York State Banking Department; and

    • Settlement Agreement between Barclays Bank PLC and the US Department of the Treasury's Office of Foreign Assets Control.

Accordingly, having considered the contents of the Settlement Documents, IT IS HEREBY RESOLVED THAT:

1.  The terms of the settlement as included in the Settlement Documents be agreed with the relevant Authorities;

2.  The fines totalling USD 298 million be paid; and

3.  Any one Director, the Company Secretary or the Group General Counsel (each an "Authorised Signatory") be severally authorised on behalf of the Board: (i) to approve any matters in relation to the Settlement; and (ii) to sign and deliver on behalf of the Company any document considered necessary or desirable in connection with the Settlement and/or any document approved by the Board with such amendments thereto as he may consider necessary or desirable.


...........................................
Marcus Agius

...........................................
David Booth


...........................................
Sir Richard Broadbent

...........................................
Alison Carnwath


...........................................
Leigh Clifford

...........................................
Fulvio Conti


...........................................
Robert E Diamond JR

...........................................
Simon Fraser


...........................................
Reuben Jeffery III

...........................................
Sir Andrew Likierman


...........................................
Chris Lucas

...........................................
Sir Michael Rake


...........................................
Sir John Sunderland

...........................................
John Varley


...........................................
Dambisa Moyo

3/8/2010
...........................................
Date

BARCLAYS PLC and BARCLAYS BANK PLC

WRITTEN RESOLUTIONS OF THE BOARDS

We, being all the members of the Boards of Barclays PLC and Barclays Bank PLC, acting pursuant to Article 115 of the Articles of Association of Barclays PLC and Article 113 of the Articles of Association of Barclays Bank PLC, hereby resolve as follows:

SETTLEMENT RELATING TO HISTORIC PAYMENT PRACTICES

INVOLVING UNITED STATES DOLLAR CROSS BORDER TRANSACTIONS

It is noted that:

1. As the Boards have been advised  from time to time, Barclays has been conducting an internal review of its conduct with respect to United States dollar payments involving countries, persons and entities subject to United States Government economic sanctions.

2. Barclays has been reporting the results of this review to the FSA, the United States Department of Justice, the District Attorney of the County of New York, US Department of the Treasury's Office of Foreign Assets Control, the Board of Governors of the Federal Reserve System and the New York State Banking Department (together the "Authorities").

3. At the Board meetings on 24 June 2010 and 3 August 2010, the Boards received reports with respect to the progress of the internal review and discussions with the Authorities with respect to the matters covered by the review.

4. An agreement to conclude the investigations and resolve the allegations of misconduct arising from the investigations has been proposed. The proposed settlement is set forth in the following attached documents (together the "Settlement Documents"):

   • Deferred Prosecution Agreement between Barclays Bank PLC and the Asset Forfeiture and Money Laundering Section of the Criminal Division of the United States Department of Justice, plus the Factual Statement attached as Appendix A.

   • Deferred Prosecution Agreement between Barclays Bank PLC and the District Attorney of the County of New York, plus the Factual Statement attached as Appendix B.

   • Order to Cease and Desist Issued Upon Consent Pursuant to the Federal Deposit Insurance Act, as amended, by the Board of Governors of the Federal Reserve System and the New York State Banking Department; and

   • Settlement Agreement between Barclays Bank PLC and the US Department of the Treasury's Office of Foreign Assets Control.

Accordingly, having considered the contents of the Settlement Documents, IT IS HEREBY RESOLVED THAT:

1. The terms of the settlement as included in the Settlement Documents be agreed with the relevant Authorities;

2. The fines totalling USD 298 million be paid; and

3. Any one Director, the Company Secretary or the Group General Counsel (each an "Authorised Signatory") be severally authorised on behalf of the Board: (i) to approve any matters in relation to the Settlement; and (ii) to sign and deliver on behalf of the Company any document considered necessary or desirable in connection with the Settlement and/or any document approved by the Board with such amendments thereto as he may consider necessary or desirable.

......................................
Marcus Agius

......................................
David Booth

......................................
Sir Richard Broadbent

Alison Carnwath

......................................
Leigh Clifford

......................................
Fulvio Conti

......................................
Robert E Diamond JR

......................................
Simon Fraser

......................................
Reuben Jeffery III

......................................
Sir Andrew Likierman

......................................
Chris Lucas

......................................
Sir Michael Rake

......................................
Sir John Sunderland

......................................
John Varley

......................................
Dambisa Moyo

3/8/2010
Date

BARCLAYS PLC and BARCLAYS BANK PLC

WRITTEN RESOLUTIONS OF THE BOARDS

We, being all the members of the Boards of Barclays PLC and Barclays Bank PLC, acting pursuant to Article 115 of the Articles of Association of Barclays PLC and Article 113 of the Articles of Association of Barclays Bank PLC, hereby resolve as follows:

SETTLEMENT RELATING TO HISTORIC PAYMENT PRACTICES

INVOLVING UNITED STATES DOLLAR CROSS BORDER TRANSACTIONS

It is noted that:

1. As the Boards have been advised from time to time, Barclays has been conducting an internal review of its conduct with respect to United States dollar payments involving countries, persons and entities subject to United States Government economic sanctions.

2. Barclays has been reporting the results of this review to the FSA, the United States Department of Justice, the District Attorney of the County of New York, US Department of the Treasury's Office of Foreign Assets Control, the Board of Governors of the Federal Reserve System and the New York State Banking Department (together the "Authorities") .

3. At the Board meetings on 24 June 2010 and 3 August 2010, the Boards received reports with respect to the progress of the internal review and discussions with the Authorities with respect to the matters covered by the review.

4. An agreement to conclude the investigations and resolve the allegations of misconduct arising from the investigations has been proposed. The proposed settlement is set forth in the following attached documents (together the "Settlement Documents"):

- Deferred Prosecution Agreement between Barclays Bank PLC and the Asset Forfeiture and Money Laundering Section of the Criminal Division of the United States Department of Justice, plus the Factual Statement attached as Appendix A.

- Deferred Prosecution Agreement between Barclays Bank PLC and the District Attorney of the County of New York, plus the Factual Statement attached as Appendix B.

- Order to Cease and Desist Issued Upon Consent Pursuant to the Federal Deposit Insurance Act, as amended, by the Board of Governors of the Federal Reserve System and the New York State Banking Department; and

- Settlement Agreement between Barclays Bank PLC and the US Department of the Treasury's Office of Foreign Assets Control.

Accordingly, having considered the contents of the Settlement Documents, IT IS HEREBY RESOLVED THAT:

1. The terms of the settlement as included in the Settlement Documents be agreed with the relevant Authorities;

2. The fines totalling USD 298 million be paid; and

3. Any one Director, the Company Secretary or the Group General Counsel (each an "Authorised Signatory") be severally authorised on behalf of the Board: (i) to approve any matters in relation to the Settlement; and (ii) to sign and deliver on behalf of the Company any document considered necessary or desirable in connection with the Settlement and/or any document approved by the Board with such amendments thereto as he may consider necessary or desirable.

..............................................
Marcus Agius

David Booth

..............................................
Sir Richard Broadbent

..............................................
Alison Carnwath

..............................................
Leigh Clifford

..............................................
Fulvio Conti

..............................................
Robert E Diamond JR

..............................................
Simon Fraser

..............................................
Reuben Jeffery III

..............................................
Sir Andrew Likierman

..............................................
Chris Lucas

..............................................
Sir Michael Rake

..............................................
Sir John Sunderland

..............................................
John Varley

..............................................
Dambisa Moyo

3.8.2010
..............................................
Date

BARCLAYS PLC and BARCLAYS BANK PLC

WRITTEN RESOLUTIONS OF THE BOARDS

We, being all the members of the Boards of Barclays PLC and Barclays Bank PLC, acting pursuant to Article 115 of the Articles of Association of Barclays PLC and Article 113 of the Articles of Association of Barclays Bank PLC, hereby resolve as follows:

SETTLEMENT RELATING TO HISTORIC PAYMENT PRACTICES

INVOLVING UNITED STATES DOLLAR CROSS BORDER TRANSACTIONS

It is noted that:

1. As the Boards have been advised  from time to time, Barclays has been conducting an internal review of its conduct with respect to United States dollar payments involving countries, persons and entities subject to United States Government economic sanctions.

2. Barclays has been reporting the results of this review to the FSA, the United States Department of Justice, the District Attorney of the County of New York, US Department of the Treasury's Office of Foreign Assets Control, the Board of Governors of the Federal Reserve System and the New York State Banking Department (together the "Authorities") .

3. At the Board meetings on 24 June 2010 and 3 August 2010, the Boards received reports with respect to the progress of the internal review and discussions with the Authorities with respect to the matters covered by the review.

4. An agreement to conclude the investigations and resolve the allegations of misconduct arising from the investigations has been proposed. The proposed settlement is set forth in the following attached documents (together the "Settlement Documents"):

   - Deferred Prosecution Agreement between Barclays Bank PLC and the Asset Forfeiture and Money Laundering Section of the Criminal Division of the United States Department of Justice, plus the Factual Statement attached as Appendix A.

   - Deferred Prosecution Agreement between Barclays Bank PLC and the District Attorney of the County of New York, plus the Factual Statement attached as Appendix B.

   - Order to Cease and Desist Issued Upon Consent Pursuant to the Federal Deposit Insurance Act, as amended, by the Board of Governors of the Federal Reserve System and the New York State Banking Department; and

   - Settlement Agreement between Barclays Bank PLC and the US Department of the Treasury's Office of Foreign Assets Control.

Accordingly, having considered the contents of the Settlement Documents, IT IS HEREBY RESOLVED THAT:

1. The terms of the settlement as included in the Settlement Documents be agreed with the relevant Authorities;

2. The fines totalling USD 298 million be paid; and

3. Any one Director, the Company Secretary or the Group General Counsel (each an "Authorised Signatory") be severally authorised on behalf of the Board: (i) to approve any matters in relation to the Settlement; and (ii) to sign and deliver on behalf of the Company any document considered necessary or desirable in connection with the Settlement and/or any document approved by the Board with such amendments thereto as he may consider necessary or desirable.

.......................................:          ..........................................
Marcus Agius                                      David Booth.

......................................          ..........................................
Sir Richard Broadbent                             Alison Carnwath

......................................          ..........................................
Leigh Clifford                                    Fulvio Conti

......................................          ..........................................
Robert E Diamond JR                               Simon Fraser

......................................          ..........................................
Reuben Jeffery III                                Sir Andrew Likierman

......................................          ..........................................
Chris Lucas                                       Sir Michael Rake

......................................          ..........................................
Sir John Sunderland                               John Varley

......................................
Dambisa Moyo

3/8/2020
..........................................
Date

# Tab 1

Draft of July 30, 2010

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. _____ |
| | ) | |
| BARCLAYS BANK PLC, | ) | |
| | ) | DEFERRED PROSECUTION |
| Defendant. | ) | AGREEMENT |
| | ) | |
| | ) | |
| | ) | |

Defendant Barclays Bank PLC ("Barclays"), a financial institution registered and organized under the laws of England and Wales, as authorized to specifically act and approve this agreement by the Board of Barclays in a corporate resolution dated August XX, 2010, hereby enters into this Deferred Prosecution Agreement (the "Agreement") with the Asset Forfeiture and Money Laundering Section of the Criminal Division of the United States Department of Justice (the "United States").

1.    **Charges:** Barclays agrees that it shall waive indictment and agrees to the filing of a two-count Criminal Information in the United States District Court for the District of Columbia, charging it with: (1) willfully violating and attempting to violate the Trading with the Enemy Act, Title 50, United States Code, Appendix, Sections 5 and 16, and regulations issued thereunder; and (2) willfully violating and attempting to violate the International Emergency Economic Powers Act, Title 50, United States Code, Section 1705, and regulations issued thereunder.

1

2.     **Acceptance of Responsibility:**   Barclays accepts and acknowledges responsibility for its conduct and that of its employees as set forth in the Factual Statement attached hereto as Exhibit A and incorporated herein by reference (the "Factual Statement"). If the United States, pursuant to Paragraph 9 of this Agreement, initiates a prosecution that is deferred by this Agreement against Barclays, Barclays agrees that it will neither contest the admissibility of the Factual Statement, reports, or any other documents provided by Barclays to the United States nor contradict in any such proceeding the facts contained within the Factual Statement. Barclays waives and foregoes any right under the United States Constitution, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other rule, to assert that any plea, plea discussions, and any related statements made by or on behalf of Barclays prior or subsequent to this Agreement, or any leads derived therefrom, should be inadmissible, suppressed, or otherwise excluded from evidence at any judicial proceeding arising from this Agreement. Barclays further agrees that any and all statements and admissions, in any form, made by or on behalf of Barclays or any employee or representative of Barclays during the course of negotiations concerning this Agreement or at any other time, or any leads from such statements or admissions, shall be admissible in evidence in any and all criminal proceedings arising from this Agreement.

3.     **Forfeiture Amount:**   As a result of Barclays' conduct, including the conduct set forth in the Factual Statement, the parties agree that the United States could institute a civil and/or criminal forfeiture action against certain funds held by Barclays and that such funds would be forfeitable pursuant to either Section 981 or 982 of Title 18

2

Draft of July 30, 2010

of the United States Code. Barclays hereby acknowledges that at least $298,000,000 was involved in transactions described in the Factual Statement, and that such transactions by Barclays, or involving funds that were held at, or passed through certain accounts at Barclays, violated: Title 50, United States Code, Appendix, Sections 5 and 16, and the regulations issued thereunder; Title 50, United States Code, Section 1705, and the regulations issued thereunder. In lieu of forfeiture resulting from a criminal forfeiture proceeding, Barclays hereby agrees to pay to the United States the sum of $149,000,000[1] (the "Forfeiture Amount"). Barclays hereby agrees that the funds paid by Barclays pursuant to this Agreement shall be considered substitute *res* for the purpose of forfeiture to the United States pursuant to either 981 or 982 of Title 18 of the United States Code, and Barclays releases any and all claims it may have to such funds. Barclays shall pay the Forfeiture Amount within three (3) business days from Court approval of this Agreement pursuant to payment instructions as directed by the United States in its sole discretion.

4.   **Court is Not Bound:** Barclays and the United States understand that the Agreement must be approved by the United States District Court for the District of Columbia, in accordance with 18 U.S.C. § 3161(h)(2). If that Court declines to approve this Agreement for any reason, the United States and Barclays are released from any obligation imposed upon them by this Agreement, this Agreement shall be null and void, and the United States shall not premise any prosecution of Barclays upon any admissions or acknowledgements contained herein, including in the Factual Statement.

---

[1] Barclays has also agreed to pay a separate and additional $149,000,000 pursuant to a Deferred Prosecution Agreement with the District Attorney of the County of New York being entered into contemporaneously, resulting in an overall total amount of $298,000,000.

3

Draft of July 30, 2010

5.     **Deferral of Prosecution**:  In consideration of Barclays' remedial actions
to date and its willingness to: (a) acknowledge responsibility for its actions; (b)
voluntarily disclose such conduct; (c) voluntarily produce documents and reports which
describe its conduct; (d) voluntarily terminate the conduct set forth in the Factual
Statement prior to the commencement of the United States investigation; (e) continue its
cooperation with the United States as stated in Paragraph 6; (f) demonstrate its
implementation of policies and procedures to comply with provisions of Financial Action
Task Force international Anti-Money Laundering and Combating Financing of Terrorism
best practices and the Wolfsberg Anti-Money Laundering Principles for Correspondent
Banking; and (g) settle any and all civil and criminal claims currently held by the United
States for any act within the scope of the Factual Statement, the United States agrees as
follows:

i.     the United States shall recommend to the Court, pursuant to 18
U.S.C. § 3161(h)(2), that prosecution of Barclays on the Information filed pursuant to
Paragraph 1 be deferred for a period of twenty-four (24) months, or less at the discretion
of the United States,  from the date of the filing of the Information referred to in
Paragraph 1. Barclays shall consent to a motion, the contents to be agreed upon by the
parties, to be filed by the United States with the Court promptly upon execution of this
Agreement, pursuant to 18 U.S.C. § 3161(h)(2), in which the United States will present
this Agreement to the Court and move for a continuance of all further criminal
proceedings, including trial, for a period of twenty-four (24) months, for speedy trial
exclusion of all time covered by such a continuance, and for approval by the Court of this

4

deferred prosecution. Barclays further agrees to waive and does hereby expressly waive any and all rights to a speedy trial pursuant to the Fifth and Sixth Amendments of the United States Constitution, Title 18, United States Code, Section 3161, Federal Rule of Criminal Procedure 48(b), and any applicable Local Rules of the United States District Court for the District of Columbia for the period that this Agreement is in effect; and

      ii.     the United States shall, if Barclays is in full compliance with all of its obligations under this Agreement, within thirty (30) days of the expiration of the time period set forth above in Paragraph 5(i), or less at the discretion of the United States, seek dismissal with prejudice of the Information filed against Barclays pursuant to Paragraph 1, and this Agreement shall expire and be of no further force or effect.

      6.    **Cooperation**: Barclays agrees, acknowledges, and understands that its cooperation with this investigation and any subsequent prosecution against other entities or individuals is an important and material factor underlying the decision by the United States to enter into this Agreement. Barclays agrees for the duration of this agreement, in accordance with and subject to all applicable United States and foreign law, to cooperate fully and honestly with the United States and with any other federal, state or local governmental department or agency designated by the United States ("Designated Agency" or "Designated Agencies") relating to the Information and Factual Statement. This cooperation includes the following, subject to the limitations set forth in paragraph 6(k) of this Agreement:

      (a)    By August 6, 2011, Barclays' Head of Compliance and Regulatory Affairs must certify that comprehensive training on Barclays policy regarding U.N., U.S., and

5

E.U. sanctions has been completed by all employees who are: (1) involved in the processing or investigation of United States Dollar ("USD") payments and their direct or indirect supervisors; (2) involved in execution of USD-denominated securities trading orders and their direct or indirect supervisors; and (3) U.S. citizens located outside the United States;

     (b)     By August 30, 2010, certify that Barclays has implemented a written policy to require the use of the Society for Worldwide Interbank Financial Telecommunications ("SWIFT") Message Type ("MT") 202COV bank-to-bank payment message where appropriate under SWIFT guidelines;

     (c)     Maintain the electronic database of SWIFT MT payment messages and other internal Barclays documents relating to USD payments processed during the period from 2000 through June 30, 2007 in electronic format for a period of five years from the execution of this Agreement;

     (d)     Completely and truthfully disclose to the United States all information and materials in its possession, custody, or control relating to any transaction within the scope of or relating to the Factual Statement that the United States or its Designated ·Agency may request, including, but not limited to, all information about the activities of Barclays and present and former directors, officers, employees, consultants, representatives, agents, subsidiary entities, minority-owned entities, and affiliated entities;

     (e)     Assemble, organize, translate, and provide, in a responsive and prompt fashion, all information and materials in the possession, custody, or control of Barclays

6

relating to any transaction within the scope of or relating to the Factual Statement as may be requested by the United States;

(f)     Use its good faith efforts to make available, at its cost, Barclays and its successors' current and former directors, officers, employees, consultants, representatives, and agents to provide information and materials and to testify as requested by the United States, including sworn testimony before a grand jury or in any judicial proceeding and interviews with the United States and Designated Agencies relating to any transaction within the scope of or relating to the Factual Statement;

(g)     Provide information, materials, and testimony as necessary or requested to identify or establish the original location, authenticity, or other basis for admission into evidence of documents or physical evidence in any criminal or judicial proceeding;

(h)     Implement compliance procedures and training designed to ensure that the Barclays compliance officer in charge of sanctions is made aware, in a timely manner, of any known requests or attempts by any entity (including, but not limited to, Barclays' customers, financial institutions, companies, organizations, groups, or persons) to withhold or alter its name or other identifying information where the request or attempt appears to be related to circumventing or evading U.S. sanctions laws. Barclays' Head of Compliance and Regulatory Affairs, or his or her designee, shall report to the United States the name and contact information of any entity that makes such a request;

(i)     Abide by any and all orders and regulations regarding remedial measures or other required actions related to this matter issued by either (1) the Board of Governors

7

of the Federal Reserve System or (2) the Office of Foreign Assets Control of the United States Department of the Treasury; and

(j)     Provide certification by Barclays' Head of Compliance and Regulatory Affairs twenty-one (21) months from execution of this Agreement that he or she (1) has reviewed the foregoing commitments contained in Paragraph 6 of this Agreement; (2) has made inquiries with relevant Barclays personnel, including the responsible heads of internal audit and operations; and (3) based on those inquiries, can attest that Barclays has, complied with the commitments contained in Paragraph 6 of this Agreement.

(k)     To the extent that a United States request requires transmittal through formal government channels, use its best efforts to facilitate such transmittal and agrees not to oppose any request made in accordance with applicable law either publicly or privately. Nothing in this Agreement shall be construed to require Barclays to produce any documents, records or tangible evidence that are protected by the attorney-client privilege or work product doctrine or United Kingdom or other applicable confidentiality, criminal, or data protection laws.

7.     **Government Commitments**:     In return for the full and truthful cooperation of Barclays and compliance with the terms and conditions of this Agreement, the United States agrees that it shall not seek to prosecute Barclays, its corporate parents, subsidiaries, affiliates, successors, predecessors, and assigns for any act within the scope of the Factual Statement, unless: (a) other than the transactions that have already been disclosed and documented to the United States, Barclays willfully transmitted or approved the transmission of USD-denominated funds that went to or came from persons

8

or entities designated at the time of the transaction by the Office of Foreign Assets
Control as a Specially Designated Terrorist, a Specially Designated Global Terrorist, a
Foreign Terrorist Organization, or a proliferator of Weapons of Mass Destruction (an
"Undisclosed Special SDN Transaction"); or (b) in the sole reasonable discretion of the
United States, there is a material breach of this Agreement. In the event of a breach
resulting in a prosecution of Barclays or a prosecution related to an Undisclosed Special
SDN transaction, the United States may use any information provided by or on behalf of
Barclays to the United States or any investigative agency, whether prior to or subsequent
to this Agreement, and/or any leads derived from such information, including the
attached Factual Statement.

8.      **Waiver of Rights**:    Barclays expressly waives, for purposes of this
Agreement and any action resulting from a breach of this Agreement:

(a)      any challenges to the venue or jurisdiction of the United States District
Court for the District of Columbia; and

(b)      any right to be charged by an Indictment returned by a grand jury, and
agrees to be prosecuted on the Information filed in this matter or on a superseding
Information arising from the facts presented in the Factual Statement.

9.      **Breach of the Agreement**:    If the United States determines that Barclays
has committed a material breach of any provision of this Agreement, the United States
shall provide written notice to Barclays' counsel of the alleged breach and provide
Barclays with a two-week period from the date of receipt of said notice, or longer at the
discretion of the United States, in which to make a presentation to the United States to

9

Draft of July 30, 2010

demonstrate that no breach has occurred or, to the extent applicable, that the breach is not material, or has been cured. The parties hereto expressly understand and agree that if Barclays fails to make the above-noted presentation within such time period, it shall be presumed that Barclays is in material breach of this Agreement. The parties further understand and agree that the United States' exercise of discretion under this paragraph is not subject to review in any court or tribunal outside the Criminal Division of the Department of Justice. In the event of a breach of this Agreement that results in a prosecution, such prosecution may be premised upon any information provided by or on behalf of Barclays to the United States or any Designated Agency, whether prior to or subsequent to this Agreement, and/or any leads derived from such information, including the attached Factual Statement, unless otherwise agreed to by the United States and Barclays in writing at the time the information was provided to the United States. Barclays hereby further expressly agrees that within six months of a determination by the United States that a material breach of this Agreement has occurred, any violations of federal law that were not time-barred by the applicable statute of limitations as of the execution of this Agreement, including any claims covered by the tolling agreement signed by the parties, and that: (a) relate to the Factual Statement; or (b) were hereinafter discovered by the United States, may in the sole reasonable discretion of the United States be charged against Barclays, notwithstanding the provisions or expiration of any applicable statute of limitations.

10. **Requirement to Obey the Law:** If the United States determines during the term of this Agreement that Barclays has committed any federal crime after the

10

execution of this Agreement, Barclays shall, in the sole discretion of the United States, thereafter be subject to prosecution for any federal crimes of which the United States has knowledge, including but not limited to the conduct described in the Factual Statement. The discovery by the United States of any purely historical criminal conduct that did not take place during the term of the Agreement will not constitute a breach of this provision.

11.   **Parties Bound by the Agreement**: This Agreement and all provisions set forth herein bind Barclays and any of its corporate parents, subsidiaries, affiliates, successors, predecessors, and assigns. It is further understood that this Agreement and all provisions set forth herein are binding on the United States, but specifically do not bind any federal agencies, or any state or local authorities, although the United States will bring the cooperation of Barclays and its compliance with its other obligations under this Agreement to the attention of federal, state, or local prosecuting offices or regulatory agencies, if requested by Barclays or its attorneys.

12.   **Public Statements**: Barclays expressly agrees that it shall not, through its attorneys, board of directors, agents, officers, employees, consultants, contractors, subcontractors, or representatives, including any person or entity controlled by any of them, make any public statement contradicting, excusing, or justifying any statement of fact contained in the Factual Statement. Any such public statement by Barclays, its attorneys, board of directors, agents, officers, employees, consultants, contractors, subcontractors, or representatives, including any person or entity controlled by any of them, shall constitute a material breach of this Agreement as governed by Paragraph 9 of this Agreement, and Barclays would thereafter be subject to prosecution pursuant to the

terms of this Agreement. The decision of whether any public statement by any such person contradicting, excusing, or justifying a fact contained in the Factual Statement will be imputed to Barclays for the purpose of determining whether Barclays has breached this Agreement shall be in the sole and reasonable discretion of the United States. Upon the United States' notification to Barclays of a public statement by any such person that in whole or in part contradicts, excuses, or justifies a statement of fact contained in the Factual Statement, Barclays may avoid breach of this Agreement by publicly repudiating such statement within seventy-two (72) hours after notification by the United States. This paragraph is not intended to apply to any statement made by any individual in the course of any criminal, regulatory, or civil case initiated by a governmental or private party against such individual regarding that individual's personal conduct.

13.    **Sales or Mergers**: Barclays agrees that if it sells, merges, or transfers all or substantially all of its business operations or assets as they exist as of the execution of this Agreement to a single purchaser or group of affiliated purchasers during the term of this Agreement, it shall include in any contract for sale, merger, or transfer a provision binding the purchaser/successor/transferee to the obligations described in this Agreement. Any such provision in a contract of sale, merger, or transfer shall not expand or impose additional obligations on Barclays as they relate to Paragraph 6 of this Agreement.

14.    **Conduct Covered by Agreement**: It is further understood that this Agreement does not relate to or cover any conduct by Barclays other than for any act within the scope of the Factual Statement and this Agreement.

12

Draft of July 30, 2010

15.     **Public Filing:** Barclays and the United States agree that, upon acceptance by the United States District Court for the District of Columbia, this Agreement (and its attachments) and an Order deferring prosecution shall be publicly filed in the United States District Court for the District of Columbia.

16.     **Complete Agreement:** This Agreement sets forth all the terms of the Agreement between Barclays and the United States. There are no promises, agreements, or conditions that have been entered into other than those expressly set forth in this Agreement, and none shall be entered into and/or be binding upon Barclays or the United States unless signed by the United States, Barclays' attorneys, and a duly authorized representative of Barclays. This Agreement supersedes any prior promises, agreements, or conditions between Barclays and the United States. Barclays agrees that it has the full legal right, power, and authority to enter into and perform all of its obligations under this Agreement and it agrees to abide by all terms and obligations of this Agreement as described herein.

**[REST OF THE PAGE IS INTENTIONALLY BLANK]**

13

Draft of July 30, 2010

**Acknowledgment**

I, the duly authorized representative of Barclays (the "Bank") hereby expressly acknowledge the following: (1) that I have read this entire Agreement as well as the other documents filed herewith in conjunction with this Agreement, including the Information and Factual Statement; (2) that I have had an opportunity to discuss this Agreement fully and freely with the Bank's attorneys; (3) that the Bank fully and completely understands each and every provision of this Agreement; (4) that the Bank is fully satisfied with the advice and representation provided by its attorneys; (5) that I am authorized, on behalf of the Bank, to enter this Agreement; and (6) that the Bank enters this Agreement knowingly and voluntarily.

Barclays Bank PLC

_____         _____

DATE                              [NAME
                                  Title]

Draft of July 30, 2010

### *Counsel for Barclays Bank PLC*

We, the undersigned, are attorneys representing Barclays in this matter. In connection with such representation, we hereby expressly acknowledge the following: (1) we have reviewed and discussed this Agreement with our client; (2) we have explained fully each of the terms and conditions of this Agreement to our client; (3) we have answered fully each and every question asked of us by our client; and (4) we believe that our client fully and completely understands all of the Agreement's terms.

| | |
|---|---|
| DATE | David H. Braff |
| | Sullivan & Cromwell LLP |

| | |
|---|---|
| DATE | Steven R. Peikin |
| | Sullivan & Cromwell LLP |

15

Draft of June 30, 2010

*__On Behalf of the Government__*

JENNIFER SHASKY CALVERY
Chief, Asset Forfeiture and
 Money Laundering Section

By: _____

FREDERICK REYNOLDS
TEXAS BAR 24003453
Senior Trial Attorney

KEVIN GERRITY
TEXAS BAR 24025378
Trial Attorney
Asset Forfeiture and
 Money Laundering Section
U.S. Department of Justice
1400 New York Avenue, N.W.
Washington, D.C.  20005
(202) 514-1263

Date:  August __, 2010

16

Draft of June 30, 2010

*__Exhibit A__*

Factual Statement

# Tab 1A

## EXHIBIT A -- FACTUAL STATEMENT

### I.    Introduction

1.     This Factual Statement is made pursuant to, and is part of, the Deferred Prosecution
Agreements dated _____, 2010, between the U.S. Department of Justice ("DOJ") and
Barclays Bank PLC ("Barclays"), a financial institution registered and organized under the laws
of England and Wales, and between the New York County District Attorney's Office ("DANY")
and Barclays.

2.     From the mid-1990s through September 2006, Barclays violated both U.S. and New York
State criminal laws by knowingly and willfully moving or permitting to be moved hundreds of
millions of dollars through the U.S. financial system on behalf of banks from Cuba, Iran, Libya,
Sudan, and Burma, and persons listed as parties or jurisdictions sanctioned by the Office of
Foreign Assets Control of the United States Department of the Treasury ("OFAC") (collectively,
the "Sanctioned Entities") in violation of U.S. economic sanctions.

3.     Barclays engaged in this criminal conduct by: (a) following instructions, principally from
banks from Cuba, Iran, Libya, Sudan, and Burma not to mention their names in U.S. dollar
("USD") payment messages sent to Barclays' branch in New York, New York (the "New York
Branch") and to other financial institutions located in the United States; (b) routing USD
payments through an internal Barclays sundry account to hide the payments' connection to
Sanctioned Entities; (c) amending and reformatting USD payment messages to remove
information identifying Sanctioned Entities; and (d) deliberately using a less transparent method
of payment messages, known as cover payments.

4.     Barclays' conduct, which occurred outside the United States, caused its New York
Branch, and other financial institutions located in the United States, to process payments that
otherwise should have been held for investigation, rejected, or blocked pursuant to U.S.

1

sanctions regulations administered by OFAC.[1]   Additionally, by its conduct, Barclays: (a) prevented its New York Branch and other financial institutions in the United States from filing required Bank Secrecy Act ("BSA") and OFAC-related reports with the U.S. government; (b) caused false information to be recorded in the records of U.S. financial institutions; and (c) caused U.S. financial institutions not to make records that they otherwise would have been required by law to make.

5.      In May 2006, Barclays voluntarily disclosed to OFAC four transactions that were made in violation of U.S. sanctions. At that time, Barclays commenced a limited internal investigation into the operation and limitations of its automated filtering system and Barclays' USD transactions involving U.S. sanctioned countries and persons. Thereafter, in November 2006, Barclays exited all USD correspondent relationships with banks subject to U.S. economic sanctions, banks headquartered in sanctioned countries, and the subsidiaries of such banks (the "Sanctioned Banks"). In 2007, after being contacted by federal and state prosecutors, Barclays agreed to cooperate fully, and broadened its review to conduct a comprehensive internal investigation and historical payment analysis covering activity and transactions from January 1, 2000 to July 31, 2007.

6.      Barclays has provided prompt and substantial cooperation by sharing the results of its internal investigation with DOJ and DANY, as well as with OFAC, and Barclays' U.S. banking regulators, the Board of Governors of the Federal Reserve System and the New York State Banking Department.   From the beginning of the investigation, Barclays has taken full responsibility for its conduct.

---

[1] A rejection occurs when a financial institution rejects a funds transfer because processing the transfer would violate or facilitate an underlying transaction that is prohibited by the OFAC sanctions. OFAC must be notified when a payment is rejected. A blocked (or frozen) payment occurs when a financial institution identifies a payment as being made in contravention of U.S. sanctions regulations, prevents its completion (holds the payment) and notifies OFAC. A license is then generally required from OFAC in order to release the funds.

## II.     Barclays' Business Organization

7.     Barclays is a global financial services provider headquartered in London, United Kingdom, and is one of the largest banks in the world. Barclays employs more than 144,000 people, has more than 48 million customers, and operates in more than 50 countries. At all times relevant to this matter, Barclays was a wholly-owned subsidiary of Barclays PLC, a public limited liability company organized under the laws of England and Wales. Barclays' home country regulator is the United Kingdom's Financial Services Authority ("FSA"). The New York Branch functioned as the primary USD clearer for all of Barclays, its affiliates, and its customers.

8.     Until November 2006, Barclays maintained correspondent banking relationships with several Sanctioned Banks.    Barclays did not, however, maintain physical branches or representative offices in Cuba, Iran, Libya, Sudan Burma, or other countries subject to OFAC sanctions.

9.     Barclays' December 31, 2009 annual report listed its annual audited consolidated net income attributable to shareholders as $14.31 billion USD; and $6.76 billion USD as of December 31, 2008.   Total audited consolidated assets as of the same dates equalled $1.97 trillion USD and $2.86 trillion USD, respectively.

## III.     Applicable Law

10.     At all times relevant to this matter, various U.S. economic sanctions laws regulating financial and other transactions involving sanctioned countries, entities, and persons were in existence.   Those laws applied to transactions occurring within U.S. territorial jurisdiction. OFAC promulgated regulations to administer and enforce the economic sanctions laws,

3

including regulations for economic sanctions against specific countries, entities, and individuals, including Specially Designated Nationals ("SDNs").[2]

### *Cuba Sanctions*

11.     Beginning with Executive Orders and regulations issued at the direction of President John F. Kennedy, the U.S. has maintained an economic embargo against Cuba through the enactment of various laws and regulations. These laws, restricting U.S. trade and economic transactions with Cuba, were promulgated under the Trading With the Enemy Act ("TWEA"), Title 50, United States Code Appendix, Sections 1-44. These laws are generally administered by OFAC, and prohibit virtually all financial and commercial dealings with Cuba, Cuban businesses, and Cuban assets.

12.     Unless authorized by OFAC, U.S. persons are prohibited from engaging in financial transactions involving or benefiting Cuba or Cuban nationals. This prohibition includes all "transfers of credit and all payments" and "transactions in foreign exchange." 31 C.F.R. § 515.201(a). Further, unless authorized by OFAC, U.S. persons are prohibited from engaging in transactions involving property in which Cuba or Cuban nationals have any direct or indirect interest, including all "dealings in . . . any property or evidences of indebtedness or evidences of ownership of property by any person subject to the jurisdiction of the United States" and all "transfers outside the United States with regard to any property or property interest subject to the jurisdiction of the United States." 31 C.F.R. § 515.201(b). The Cuban Assets Control Regulations also prohibit any "transaction for the purpose or which has the effect of evading or avoiding any of the prohibitions" set forth in the OFAC regulations. 31 C.F.R. § 515.201(c).

---

[2] SDNs are individuals and companies owned or controlled by, or acting on behalf of, countries subject to U.S. sanctions. SDNs can also be individuals, groups, and entities, such as terrorists and narcotics traffickers, designated under programs that are not country-specific.

4

*Iran Sanctions*

13.     In 1987, President Ronald W. Reagan issued Executive Order 12613, which imposed a

broad embargo on imports of Iranian-origin goods and services. U.S. sanctions against Iran were

strengthened in 1995 and 1997, when President William J. Clinton issued Executive Order Nos.

12957, 12959, and 13059. These Executive Orders prohibit virtually all trade and investment

activities between the U.S. and Iran, including but not limited to broad prohibitions on: (a) the

importation into the U.S. of goods or services from Iran; (b) the exportation, sale, or supply of

goods, technology or services from the U.S. or by a U.S. person to Iran; (c) trade-related

transactions with Iran by U.S. persons, including financing, facilitating, or guaranteeing such

transactions; and (d) investment by U.S. persons in Iran or in property owned or controlled by

Iran. With the exception of certain exempt or authorized transactions, OFAC regulations

implementing the Iranian sanctions generally prohibit the export of services to Iran from the

United States.

*Libya Sanctions*

14.     On January 7, 1986, President Reagan issued Executive Order 12543 imposing broad

economic sanctions against Libya. Subsequently, President Reagan issued Executive Order

12544 on January 8, 1986, ordering the blocking of all property and interests in property of the

Government of Libya. President George H. W. Bush strengthened those sanctions in 1992,

pursuant to Executive Order 12801. On September 22, 2004, President George W. Bush issued

Executive Order 13357, terminating the national emergency with regard to Libya and revoking

the sanction measures imposed by the prior Executive Orders.

5

**Sudan Sanctions**

15.     On November 3, 1997, President Clinton issued Executive Order 13067 imposing a trade embargo against Sudan and blocking all property, and interests in property, of the Government of Sudan. President George W. Bush strengthened those sanctions in 2006 pursuant to Executive Order 13412.    Under these Executive Orders, virtually all trade and investment activities between the U.S. and Sudan is prohibited, including but not limited to broad prohibitions on: (a) the importation into the U.S. of goods or services from Sudan; (b) the exportation or re-exportation of any goods, technology, or services from the U.S. or by a U.S. person to Sudan; and (c) trade- and service-related transactions with Sudan by U.S. persons, including financing, facilitating, or guaranteeing such transactions. The Executive Orders further prohibit "[a]ny transactions by a United States person or within the United States that evades or avoids, has the purpose of evading or avoiding, or attempts to violate any of the prohibitions set forth in [these orders]." With the exception of certain exempt or authorized transactions, OFAC regulations implementing the Sudanese sanctions generally prohibit the export of services to Sudan from the United States.

**Burma Sanctions**

16.     On May 20, 1997, President Clinton issued Executive Order 13047, which prohibited both new investment in Burma by U.S. persons and U.S. persons' facilitation of new investment in Burma by foreign persons.

17.     On July 28, 2003, President George W. Bush signed the Burmese Freedom and Democracy Act of 2003 ("BFDA") to restrict the financial resources of Burma's ruling military junta. To implement the BFDA and to take additional steps, President Bush issued Executive Order 13310 (E.O. 13310) on July 28, 2003, which blocked all property and interests in property

6

of certain listed Burmese entities[3] and provided for the blocking of property and interest in property of other individuals and entities meeting the criteria set forth in E.O 13310. E.O. 13310 also prohibited the importation into the U.S. of articles that are a product of Burma and the exportation or re-exportation to Burma of financial services from the United States, or by U.S. persons, wherever located. The "exportation or re-exportation of financial services to Burma" is defined to include the transfer of funds, directly or indirectly, from the United States.

### *Department of Justice Charges*

18. DOJ alleges, and Barclays admits, that Barclays' conduct, as described herein, violated TWEA. Specifically, Barclays violated Title 50, United States Code, Sections 5 and 16, and Title 18, United States Code, Section 2, which collectively make it a crime to willfully violate or attempt to violate any regulation issued under TWEA, including regulations restricting transactions with Cuba. DOJ further alleges, and Barclays admits, that Barclays' conduct, as described herein, violated the International Emergency Economic Powers Act ("IEEPA"). Specifically, Barclays violated Title 50, United States Code, Section 1705, and Title 18, United States Code, Section 2, which collectively make it a crime to willfully violate or attempt to violate any regulation issued under IEEPA, including regulations restricting transactions with Iran, Libya, Sudan, and Burma.

### *New York State Penal Law Charge*

19. DANY alleges, and Barclays admits, that Barclays' conduct, as described herein, violated New York State Penal Law Sections 175.05 and 175.10, Falsifying Business Records in the First Degree and Second Degree, which make it a crime to:

> with intent to defraud . . . (i) make or cause a false entry in the
> business records of an enterprise . . . or (iv) prevent the making of

---

[3] President Bush subsequently issued Executive Orders 13448 and 13464, expanding the list of persons and entities whose property must be blocked.

> a true entry or cause the omission thereof in the business records of
> an enterprise.

Under the Penal Law, it is a felony when, as here, a person or entity commits Falsifying Business Records in the Second Degree and the person's or entity's "intent to defraud includes an intent to commit another crime or to aid or conceal the commission of a crime."

### IV. Scope of Conduct

20.     For more than a decade, Barclays knowingly and willfully engaged in conduct and practices outside the United States that caused its New York Branch and other financial institutions located in the United States to process payments in violation of U.S. sanctions. To hide these illegal transactions, Barclays altered and routed payment messages to ensure that payments violating IEEPA, TWEA, and OFAC regulations cleared without difficulty through its New York Branch and other U.S. financial institutions.   The total value of prohibited transactions for the period of Barclays' review was approximately $500 million.

### V.     Payment Processing

21.     Barclays is a member of the Society for Worldwide Interbank Financial Telecommunications ("SWIFT") and has historically used the SWIFT system to transmit international payment messages[4] with financial institutions around the world.

22.     Barclays originally processed USD payment messages through numerous global locations. During the relevant time period, Barclays consolidated its USD payment processing so that the payments were predominately processed at Barclays' Payment Processing Centre in Poole, England ("Poole").

23.     International transfers of USD were routed through the United States in two ways using SWIFT Message Types ("MT"): (a) via a serial payment (MT 103 for customer payments and

---

[4] A SWIFT payment message is a method of transmitting payment settlement instructions for financial transactions.

8

MT 202 for bank-to-bank payments); or (b) via a cover payment (MT 103 plus a separate MT 202).

24.     A serial payment begins with the originating bank and is sent through the correspondent bank(s) until ultimately reaching the beneficiary bank. An MT 103 payment message requires, among other information, that the ordering and beneficiary customers be identified and transmitted from one financial institution to another throughout the entire transaction.

25.     A cover payment differs from a serial payment in that an MT 103 message is sent directly from the originating bank to the beneficiary bank and the originating bank simultaneously sends an MT 202 cover payment message to the related correspondent banks. Thus, the payment is bifurcated into two message paths. The MT 103 containing identifying information for the originator and beneficiary is sent directly to the beneficiary bank, while the MT 202, which travels through the correspondent banks, does not necessarily identify the originating and beneficiary parties. When both the originating and beneficiary banks are foreign (i.e. non-U.S.), the MT 103 for a USD payment message is not sent through or to a U.S. financial institution. Only the MT 202 is sent through the United States. Because the MT 202 payment message lacks the payment details of an MT 103, the intervening U.S. correspondent banks will not know whether the payment message involves a sanctioned entity.

## VI.     Payment Practices in Violation of U.S. Sanctions Laws

26.     During the relevant time period, Barclays knowingly and willfully engaged in conduct that caused its New York Branch and other financial institutions in the U.S. to process payments in violation of U.S. sanctions. As part of this effort to evade U.S. sanctions, Barclays: (a) followed instructions from certain Sanctioned Entities not to mention their names in USD payment messages sent to the New York Branch and to other financial institutions located in the

9

United States; (b) routed USD payments through an internal Barclays sundry account, thereby hiding the payments' connection to Sanctioned Entities; (c) amended or reformatted USD payment messages to remove information identifying Sanctioned Entities; and (d) re-sent messages as cover payments to take advantage of cover payments' lack of transparency.

27.     Barclays did not market services to or solicit business from Sanctioned Entities on the basis of these payment practices.

28.     After passage of the Patriot Act in 2001, Barclays reviewed its correspondent banking practices and identified certain of its practices as problematic. Despite this review, Barclays did not begin to take effective action until 2006. Further, prior to mid-2006, Barclays did not train its non-U.S. employees regarding Barclays' obligations under U.S. sanctions law and did not formulate or circulate any meaningful policy regarding the OFAC regulations and their requirements.

### *(A) List of Correspondents*

29.     The List of Correspondents ("LOC") was a Barclays' payment operations manual containing instructions on how to process payments for both sanctioned and non-sanctioned banks with which Barclays had correspondent relationships.[5] As early as November 1987, Barclays received instructions from Sanctioned Banks directing Barclays not to mention their names on payment messages sent to the United States. For example, in a November 1987 Head Office Circular, Barclays distributed payment instructions received from an Iranian bank asking Barclays "to amend the procedures governing the transfer of U.S. Dollars for any purpose in favour of our London branch" and to route such payments "without mentioning the name of our bank." The reason for, and effect of, these instructions was to disguise sanctioned entity

---

[5] The majority of the LOC contained typical routing instructions that are not the subject of this investigation.

payments from Barclays' correspondents in the U.S. so that such correspondents would unwittingly process the illegal payments.

30.     Barclays' employees followed the instructions in the LOC when processing USD payments involving Sanctioned Banks, thereby ensuring that the name of the bank would not appear in any MT 202 cover payment messages sent to the New York Branch. For example, with regard to USD payments sent on behalf an Iranian bank, the LOC stated, "[t]he cover MT202 for the direct Payment Order to be arranged by the remitting Bank without mentioning [the Iranian bank's] name . . . ." (emphasis in original). The LOC also contained instructions to contact the remitter or beneficiary for routing instructions for certain payments involving Sanctioned Entities. The general instructions for Iranian banks stated:

> USD PAYMENTS TO IRAN
> Certain payments may be blocked by the US Authorities. Therefore any branch with a USD transfer is advised to contact the remitter beneficiary or beneficiary's bankers to request specific routing instructions.

The general instructions for Cuba stated:

> USD PAYMENTS TO CUBA
> Certain payments may be blocked by the US Authorities. Therefore, any branch with a USD transfer is advised to contact the remitter beneficiary or beneficiary's bankers to request specific routing instructions.

31.     In 2001, Barclays prepared a memorandum regarding the LOC instructions. The memorandum stated in relevant part that:

> For Iran and Libya the published internal procedures include directions to make transfers in US dollars which circumvent constraints and breach OFAC sanctions. Instructions for Iraq and Cuba are less prescriptive but would nevertheless constitute a 'work around'.

11

Outside counsel advised Barclays that entries for Iranian and Libyan banks should be removed in favor of the following: "Only the information required by the transfer documents and no extraneous information should be provided." Additionally, Barclays was advised by outside counsel to insert certain warning language pertaining to Cuban USD transactions. The recommendation stated: "Barclays UK Operations should not make any payment or provide any facility relating to Cuba through the US or involving a US person." (emphasis in original).

### (B) Sundry Accounts

32.     A sundry account is a bank's internal suspense account typically used for the legitimate purpose of recording miscellaneous items until an appropriate account entry is determined. Barclays, however, knowingly routed sanctioned payments through Barclays' own sundry accounts, thereby disguising the true originator of USD payments. The effect of using the sundry account was that the New York Branch would believe a payment was originating from Barclays when in reality it was from a sanctioned entity. This ensured that the transaction would evade detection and would be processed by the New York Branch without question or scrutiny.

### (C) OFAC Filter

33.     The New York Branch maintained an automated filter that screened incoming payment messages against an OFAC list of sanctioned countries, entities, and individuals.[6] This software was designed to identify potential positive matches to OFAC-sanctioned entities in USD payment messages being routed through the New York Branch. Payments received by the New York Branch involving Sanctioned Entities would have been subject to investigation by the bank and then, depending on the results of the investigation, permitted, rejected, or blocked.

---

[6] OFAC regularly publishes a wide-ranging list of SDNs or targeted countries subject to U.S. sanctions. The list includes names of individuals, institutions, their variations, and, if known, addresses, dates of birth, passport numbers, and other identifying information.

12

34.     Poole also maintained an automated filter.   This filter screened outgoing payment messages to the U.S. against an OFAC list.  However, the stated function of the OFAC filter in Poole was to identify Sanctioned Entities in USD payment messages before the messages reached the United States, and as one employee emailed, to prevent "the seizure of funds in the USA."  Barclays was only concerned about USD payment messages when they were being routed to the United States.  Therefore, in the case of a cover payment, the Poole filter screened only the outgoing MT 202 payment message to the New York Branch.  Poole did not screen the related MT 103 containing the Sanctioned Entity's information that was sent by Barclays to the non-U.S. beneficiary bank.

35.     Barclays' standard operating procedures allowed and even educated its employees how to bypass both Poole's and the U.S. financial institution's OFAC filters to permit illegal payments. Pursuant to these procedures, when the Poole filter identified a payment message that contained a reference to an OFAC-sanctioned entity, that payment message was stopped for further review by Barclays' employees at Poole.  If those employees found that the payment message contained a reference to a sanctioned entity, they would follow one of the following procedures: (i) return the payment message to the remitting area via a pre-formatted fax cover sheet; (ii) alter or delete fields in the SWIFT message; or (iii) change the routing of the payment message from a serial payment to a cover payment in order to hide any connection to the sanctioned entity.

### (i) The Fax Cover Sheet

36.     Consistent with bank procedure when a payment was flagged by the Poole OFAC filter, Barclays' employees would generally return the flagged payment message to the original remitting bank.  Barclays' employees would use a specific fax cover sheet to advise the remitting bank that the payment message had been cancelled and would further identify the specific words

13

in the payment message that had caused the message to be stopped by the Poole filter. The fax cover sheet contained the following:

> OFAC ITEM: Wording below is contained in the message and does not comply with the Office of Foreign Assets Control regulations applicable to all payments sent via the U.S.A. Payments to U.S.A. must NOT contain the word listed below.

Subsequently, because Barclays was advising the remitting bank of the prohibited language, some of these payment messages would be re-sent by the remitting bank without the offending language. This enabled the payment message to now pass cleanly through the Poole filter and then be processed by the New York Branch and other unwitting U.S. financial institutions.

37.     In November 2001, the use of the fax cover sheet was identified by internal audit as problematic because "without adequate guidance the recipient of the fax advice may not be aware of the implications and may merely remove the offending text and re-submit the payment without any wider consideration." In early 2002, as a result of this audit report, the language of the fax template was re-worded in an attempt to mitigate these issues. The fax language was changed to:

> OFAC ITEM: Wording below is contained in the message and does not comply with the U.S.A. / U.K. / E.C. / U.N. Sanctions.

38.     Despite the altered wording in the fax cover sheet, no implementing guidance was circulated, and the practice of stating the offending text nevertheless continued, as did the resubmission of prohibited OFAC-sanctioned transactions with the offending text removed.

### (ii) Alteration of SWIFT Message Data

39.     Barclays intentionally altered SWIFT messages when a sanctioned entity was named in the payment message and when the payment message contained an explicit instruction not to mention the name of the Sanctioned Bank when making the USD payment via the United States.

14

In both of these instances, Barclays' employees knew that if these payment messages were sent in an unaltered form, they would be stopped and potentially blocked or rejected in the U.S. because of the information contained in the message. The employees removed the problematic references and the altered payment messages were sent to U.S. financial institutions.

### (iii) Cover Payment Messages

40.     Another practice Barclays developed to ensure that sanctioned transactions would be processed through the U.S. was to change the routing of the payment. Barclays routinely cancelled serial payment messages being routed through the U.S. that contained references to a sanctioned entity, knowing that the message could be blocked or rejected in the United States. These cancelled payment messages were resubmitted using the cover payment method. By using this bifurcated payment method, Barclays was able to disguise the beneficiary and ordering customer information from the New York Branch and other U.S. correspondent banks. Barclays would thereby successfully route prohibited transactions through the United States.

41.     Internal correspondence shows that Barclays was aware of and accepted the fact that cover payments were being purposely used to hide the identity of sanctioned parties so that the bank could continue to process payments involving Sanctioned Entities through the New York Branch. For example, one Barclays employee explained in an email:

> [W]e can get around [OFAC seizure] by sending only cover payments to US banks and then make MT103 direct to beneficiary's bank. The MT202 cover must not mention of [sic] the offending entity which could cause funds to be seized. A good example is Cuba which the US says we shouldn't do business with but we do.

Barclays' employees understood the advantage of using cover payments. The cover payment, with its limited information fields, was a better mechanism to process OFAC-prohibited transactions than using a more detailed serial payment. An employee noted in an email: "If we

15

were to route the payment via the serial payment method . . . the payment would clearly be

seized by the US authorities" but by using cover payments, "the US Treasury [would] remain

blissfully unaware of [the payments] existence."

42.     In October 2001, after a Sudanese payment was stopped, Barclays received a warning

from its New York Branch that cover payments were potentially being misused. The New York

Branch warned Barclays UK:

> This is a clear example of how foreign banks circumvent the
> OFAC Regulations by sending direct MT100s to non-US paying
> banks and the USD cover via the US correspondent bank. [The
> Sudanese] Bank is clearly a blocked entity under the Sudan
> sanctions.

43.     Despite this warning from its own New York Branch, Barclays continued disguising

sanctioned payments and routing them through its New York Branch until early- to mid-2006.

Throughout this time, Barclays was aware of the process and its effect. For example, in

December 2002, internal correspondence described the use of cover payments, stating:

> To cicumvent [sic] US legislation, [Barclays is] currently rout[ing]
> US$ items for sanctioned institutions via unnamed account
> numbers, without mention of the sanctioned party. For customer
> transfers, payment cover is routed via MT202 to New York,
> naming only the account holding bank. A direct MT103 is them
> [sic] sent to the account holding bank...Further investigation
> suggests that we are carrying out this practice on behalf of four
> [Iranian bank] customers . . . .

44.     In January 2003, a Barclays manager responded:

> I am aware of this procedure but we have not encouraged anyone
> to use it. The banks mentioned maintain accounts with us and it is
> the only way, of which I am aware, to make USD payments. This
> method also applies to Sudan and Libya and outside the middle
> east to Cuba.

45.     In July 2004, an internal assessment of Barclays' payments processing explained:

16

> Cover payments are an issue for this project as they are effectively
> a way of by passing [sic] sanctions. . . . There is nothing in these
> payment messages [MT103 and MT202] that identifies them as
> linked for the purpose of screening.

46.     In April 2005, Barclays recognized the risk of using cover payments rather than serial

payments, which contain full beneficiary details. The risk impact was noted in an internal memo:

> Changing to different message types would be much more
> expensive to us. Moral risk exists if we carry on using cover
> payments but that is what the industry does. I[n] M[y] H[umble]
> O[pinion] we should carry on using cover payments and accept
> that there is a risk of these being used on occasion to hide true
> beneficiaries (who may or may not be sanctioned individuals or
> entities).

47.     In the spring of 2006, Barclays' senior management learned that four cover payments

involving sanctioned parties had been routed through the New York Branch and were processed

because the cover payments did not mention the sanctioned beneficiary or originator. Barclays'

current management immediately made a voluntary disclosure regarding these payments to

OFAC and to its banking regulators. Soon thereafter, Barclays was contacted by DOJ and

DANY.

## VII.     Cooperation and Remediation

48.     Barclays has fully acknowledged and accepted responsibility for its conduct. Barclays

undertook a voluntary and comprehensive internal review of its historical payment processing

and sanctions compliance practices. As part of its review, Barclays interviewed more than 175

current and former employees and reviewed more than one hundred million records, including

hard copy and electronic documents. The review identified the practices described above,

including the use of the LOC, the practice of altering payment instructions and omitting the

names of Sanctioned Entities from payment messages, and the use of the sundry account.

17

Barclays reported all of its findings in a timely manner to DOJ, DANY, and to the regulatory authorities in the United States and the United Kingdom.

49.     During the course of investigations by DOJ, DANY, and other authorities, Barclays has provided prompt and substantial cooperation including the following:

    a.      Committing substantial resources, including, but not limited to, external consultants, numerous high level Barclays' employees, and an extensive document retention program, in order to conduct a thorough investigation;

    b.      Providing timely and detailed reports of the Bank's investigation;

    c.      Conducting an extensive review of customers records and SWIFT transactions, including the review of incoming and outgoing USD payments and trade finance transactions processed by Barclays between January 1, 2000 and July 31, 2007, to identify transactions that may have violated U.S. sanctions laws;

    d.      Conducting extensive data analysis, document review, and interviews to identify the practices discussed above;

    e.      Agreeing to toll any applicable statutes of limitation; and

    f.      Making current and former Barclays' employees available for interviews by DOJ and DANY.

50.     Barclays has taken voluntary steps to enhance and optimize its sanctions compliance programs by:

    a.      Voluntarily terminating relationships with Sanctioned Banks and entities;

    b.      Committing substantial personnel and resources to sanctions compliance programs, including appointing a senior employee to oversee sanctions screening processes and to ensure operational compliance with applicable sanctions laws;

18

    c.      Enhancing its USD payment filtering systems;

    d.    · Designing and providing sanctions training to more than 130,000 employees, including intensive training to more than 800 specialist employees, and ensuring that sanctions training is incorporated in training for new employees;

    e.      Creating a new enhanced sanctions compliance policy that includes a general prohibition of transactions on behalf of SDNs in all currencies;

    f.      Undertaking an extensive internal audit of its sanctions compliance programs in 2008 and reporting the results to interested authorities, including DOJ and DANY;

    g.     Committing to conduct regular further audits of sanctions compliance issues; and

    h.     Ensuring that U.S. sanctions compliance is reported to the most senior executives of the Bank.

# Tab 2

## DEFERRED PROSECUTION AGREEMENT

Barclays Bank PLC ("Barclays") is a financial institution registered and organized under the laws of England and Wales. Barclays, by and through its attorneys, Sullivan & Cromwell LLP, and the District Attorney of the County of New York ("DANY") enter into this Deferred Prosecution Agreement (the "Agreement"). Barclays also agrees to enter into a separate Deferred Prosecution Agreement with the United States Department of Justice (the "United States").

1.      Barclays agrees that it shall in all respects comply with its obligations in this Agreement.

2.      Barclays accepts and acknowledges responsibility for its conduct and that of its employees as set forth in the Factual Statement attached hereto as Exhibit A and incorporated herein by reference (the "Factual Statement").

3.      As a result of Barclays' conduct, as set forth in the Factual Statement, DANY has determined that it could institute a criminal prosecution pursuant to New York State Penal Law Section 175.10 and a civil forfeiture action against Barclays for certain funds it currently holds, and that such funds would be forfeitable under New York State law. Therefore, Barclays hereby expressly agrees to settle and does settle any and all criminal and forfeiture claims presently held by DANY against those funds for the sum of $298,000,000 (the "Settlement Amount"), half of which will be paid directly to DANY to be distributed to agencies of the City and State of New York and half of which will be paid to the United States pursuant to its deferred prosecution agreement with Barclays. The parties to this Agreement agree that the Settlement Amount will fully satisfy all forfeiture claims presently held by DANY. Barclays shall wire-transfer half

the Settlement Amount to DANY within three (3) business days of the date of court approval of the Deferred Prosecution Agreement with the United States.

4.    In consideration of Barclays' remedial actions to date and its willingness to: (i) acknowledge responsibility for its actions; (ii) have voluntarily terminated the conduct set forth in Exhibit A prior to the commencement of DANY's investigation; (iii) cooperate with DANY as stated in Paragraphs 14 of this Agreement; (iv) demonstrate its future good conduct and implementation of policies and procedures to comply with provisions of international Anti-Money Laundering and Combating Financing of Terrorism ("AML/CFT") best practices and the Wolfsberg Anti-Money Laundering Principles for Correspondent Banking; and (v) continue to provide to DANY substantial cooperation, as detailed in the Factual Statement: DANY agrees as follows:

(a)    that it shall defer prosecution of Barclays for a period of twenty-four months from the date of this Agreement, or less at the discretion of DANY.  DANY shall not prosecute Barclays if it complies with all of its obligations pursuant to this Agreement, except that DANY may choose to prosecute Barclays for any conduct that is specified in Paragraph 11 of this Agreement; and

(b)    that if Barclays is in full compliance with all of its obligations under this Agreement for the time period set forth above in Paragraph 4(a), this Agreement shall expire and be of no further force or effect.

5.    Barclays expressly agrees that within six months of determination by DANY that a material breach by Barclays of its obligations under this Agreement has occurred, any violations of New York State law that would not have been time barred as of the date of this agreement including any claims covered by a tolling agreement

2

between Barclays and DANY that relate to the facts set forth in the Factual Statement, may, in the sole discretion of DANY, be charged against Barclays, notwithstanding the provisions or expiration of any applicable statute of limitations. Barclays expressly waives any challenges to the venue and jurisdiction of the Supreme Court of the State of New York for the County of New York.

6.     DANY recognizes that the Deferred Prosecution Agreement between Barclays and the United States must be approved by the United States District Court for the District of Columbia, in accordance with 18 U.S.C. § 3161(h)(2). Should that Court decline to approve the Deferred Prosecution Agreement between Barclays and the United States for any reason, DANY and Barclays are released from any obligations imposed upon them by this Agreement, this Agreement shall be null and void, and DANY shall not premise any prosecution of Barclays, its employees, officers or directors upon any admissions or acknowledgements contained in this Agreement or the Deferred Prosecution Agreement between Barclays and the United States.

7.     Barclays expressly agrees that it shall not, through its attorneys, board of directors, agents, officers, or employees, make any public statement contradicting, excusing, or justifying any statement of fact contained in the Factual Statement. Any such public statements by Barclays, its attorneys, board of directors, agents, officers, or employees, shall constitute a material breach of this Agreement, and Barclays would thereafter be subject to prosecution pursuant to the terms of this Agreement.    The decision about whether any public statement by any such person contradicting, excusing, or justifying a fact contained in the Factual Statement will be imputed to Barclays, for the purpose of determining whether Barclays has breached this Agreement, shall be in the

3

sole discretion of DANY.[1] Upon DANY's notification to Barclays of a public statement by any such person that in whole or in part contradicts, excuses, or justifies a statement of fact contained in the Factual Statement, Barclays may avoid breach of this Agreement by publicly repudiating such statement within seventy-two hours of notification by DANY. This paragraph is not intended to apply to any statement made by any former Barclays employee, officer, or director, or any statement made by any individual in the course of any criminal, regulatory, or civil case initiated by a governmental or private party against such individual regarding that individual's personal conduct.

8.    Should DANY determine, during the term of this Agreement, that Barclays has committed any New York State crime other than those within the scope of this Agreement after the date of the signing of this Agreement, Barclays shall, in the sole discretion of DANY, thereafter be subject to prosecution for such crimes.

9.    Should DANY determine that Barclays has committed a material breach of any provision of this Agreement, DANY shall provide written notice to Barclays of the alleged breach and allow Barclays a two-week period from the date of receipt of said notice, or longer at the discretion of DANY, to make a presentation to DANY demonstrating that no breach occurred, or that the breach was not material or willful, or to otherwise demonstrate that the breach was cured. A breach that was not material or willful, as determined in the sole discretion of DANY, will not constitute a breach for purposes of this Agreement. The parties expressly understand and agree that should Barclays fail to make such a presentation within the two-week time period, it shall be presumed that Barclays is in material breach of this Agreement. In the event that a

---

[1] DANY's discretion in the enforcement of this agreement will be subject to review only to determine whether DANY has exercised its direction in an arbitrary and capricious fashion.

breach of this Agreement results in a prosecution, such prosecution may be premised upon any information provided by or on behalf of Barclays to DANY at any time, unless otherwise agreed when the information was provided.

10.    Except in the event of a breach of this Agreement, DANY agrees that it will not bring charges against Barclays, its employees, officers and directors, for any violation of law while acting within the scope of their duties, relating to all matters contained in or involving the facts described in the Factual Statement or disclosed during the course of the investigation, except as set forth in Paragraph 11 of this Agreement. DANY agrees that if, in its sole discretion, DANY determines that Barclays, its employees, officers and directors, did not act willfully as to conduct described in Paragraph 11, any criminal violations related to such conduct will fall within the scope of this paragraph and will not be charged. If DANY determines, in its sole discretion, that Barclays, its employees, officers and directors, acted willfully as to conduct described in Paragraph 11, then Barclays, its employees, officers and directors will be subject to criminal prosecution as appropriate in DANY's sole discretion.

11.    DANY agrees that it shall not seek to prosecute Barclays, its current or former employees, officers and directors, for any act within the scope of or related to the Factual Statement, or disclosed during the course of the investigation, that violated New York State law during the period set forth in the Factual Statement through the date of this Agreement, unless there is reasonable cause to believe that Barclays, or its employees, officers and directors, acting within the scope of their employment for the benefit of Barclays, knowingly and wilfully transmitted U.S. Dollar ("USD") denominated funds via the United States, that went to or came from persons or entities

5

designated at the time of the transaction by the Office of Foreign Assets Control ("OFAC") of the United States Department of the Treasury as Specially Designated Terrorists ("SDTs"), Specially Designated Global Terrorists ("SDGTs"), Foreign Terrorist Organizations ("FTOs") or proliferators of Weapons of Mass Destruction ("WMDs"), other than those disclosed to DANY prior to the date of this agreement. Barclays agrees that it shall waive the statute of limitation and speedy trial provisions of Article 30 of the Criminal Procedure Law of New York State, with respect to such conduct for the duration of this Agreement. The decision about whether Barclays has engaged in the conduct within the meaning of this paragraph shall be at the sole discretion of DANY.

12.     Barclays agrees that, if it sells or merges all or substantially all of its business operations or assets, as they exist as of the date of this Agreement, to a single purchaser or group of affiliated purchasers during the term of this Agreement, it shall include in any contract for sale or merger a provision binding the purchaser/successor to the obligations described in this Agreement. Any such provision in a contract of sale or merger shall not expand or impose new obligations on Barclays beyond those contained in this Agreement, including but not limited to Barclays' obligations as described in Paragraph 14.

13.     It is understood that nothing in this Agreement shall require Barclays to extend the obligations in this Agreement to any company or entity that it acquires after the date of this Agreement, nor shall it extend any protections to any such company or entity.

6

14.     Barclays agrees that for the term of this Agreement, in accordance with applicable laws, it shall, upon request of DANY, supply any relevant document, electronic data, or other objects in Barclays' possession, custody or control as of the date of this Agreement relating to any transaction within the scope of or relating to the Factual Statement. If such data is in electronic format, Barclays shall provide access to such data and assistance in operating any computer and other equipment that is necessary to retrieve the data.    This obligation shall not include production of materials covered by the attorney-client privilege or the work product doctrine or United Kingdom or other applicable confidentiality, criminal, or data protection laws except as provided herein. To the extent that Barclays believes in good faith that such materials are covered by United Kingdom or other applicable confidentiality, criminal, or data protection laws, Barclays shall use its best efforts to produce such materials, including supporting an application made by DANY to the appropriate governmental agency or court, for authority to provide DANY with the requested materials, provided that Barclays shall not be required to produce any materials where such production would be in breach of applicable United Kingdom law or any other applicable law. At the request of DANY, Barclays shall provide a written memorandum explaining the operation and application of United Kingdom or any other applicable law where Barclays concludes that it would be unlawful to directly or indirectly produce the materials to DANY.

15.     It is further understood that this Agreement is binding on Barclays and DANY, and specifically does not bind any federal agencies, or any state or local authorities. DANY will bring the cooperation of Barclays and its compliance with its

7

obligations under this Agreement to the attention of federal, state, or local prosecuting offices or regulatory agencies, if requested by Barclays or its attorneys.

16.     It is further understood that this Agreement does not relate to or cover any conduct by Barclays other than that disclosed during the course of the investigation or described in the Factual Statement and this Agreement.

17.     Barclays agrees that it shall:

(a)     By June 30, 2011, conduct or repeat comprehensive U.N., U.S., and E.U. sanctions, to include training of all employees who are: (1) involved in the processing or investigation of USD payments and their supervisors; (2) involved in execution of USD-denominated securities trading orders and their supervisors; and (3) U.S. citizens located outside the United States who are involved in transactions or business activities involving cross-border payments. After such training is complete, Barclays' Head of Compliance and Regulatory Affairs must certify that such training has been completed;

(b)     Maintain the electronic database of Society for Worldwide Interbank Financial Telecommunications payment messages relating to USD payments processed during the period from January 1, 2000 through April 30, 2007 in electronic format for a period of five years from the date of this Agreement;

(c)     Abide by any and all orders and regulations regarding remedial measures or other required actions related to this matter issued by either: (1) the Board of Governors of the Federal Reserve System; (2) OFAC; or (3) the New York State Banking Department.

18.     Barclays and DANY agree that this Agreement and the Factual Statement shall be disclosed to the public.

8

19.     This Agreement sets forth all the terms of the Deferred Prosecution Agreement between Barclays and DANY.  There are no promises, agreements, or conditions that have been entered into other than those expressly set forth in this Agreement, and none shall be entered into and/or are binding upon Barclays or DANY unless expressly set forth in writing, signed by DANY, Barclays' attorneys, and a duly authorized representative of Barclays.  This Agreement supersedes any prior promises, agreements, or conditions between Barclays and DANY. Barclays agrees that it has the full legal right, power and authority to enter into and perform all of its obligations under this Agreement and it agrees to abide by all terms and obligations of this Agreement as described herein.

## Acknowledgment

I, , the duly authorized representative of Barclays Bank PLC, hereby expressly acknowledge the following: (1) that I have read this entire Agreement; (2) that I have had an opportunity to discuss this Agreement fully and freely with Barclays Bank PLC's attorneys; (3) that Barclays Bank PLC fully and completely understands each and every one of its terms; (4) that Barclays Bank PLC is fully satisfied with the advice and representation provided to it by its attorneys; and (5) that Barclays Bank PLC has signed this Agreement voluntarily.

Barclays Bank PLC

_____     _____

DATE

10

## Counsel for BARCLAYS

I, David H. Braff, an attorney for Barclays Bank PLC, hereby expressly acknowledge the following: (1) that I have discussed this Agreement with our client; (2) that I have fully explained each one of its terms to our client; (3) that I have fully answered each and every question put to me by our client regarding the Agreement; and (4) I believe our client completely understands all of the Agreement's terms.

_____          _____
DATE                                      David H. Braff
                                          Sullivan & Cromwell
                                          125 Broad Street
                                          New York, New York 10004

11

**ON BEHALF OF THE NEW YORK COUNTY DISTRICT ATTORNEY'S OFFICE**

# Tab 3



UNITED STATES OF AMERICA
BEFORE THE
BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM
WASHINGTON, D.C.

NEW YORK STATE BANKING DEPARTMENT
NEW YORK, NEW YORK

In the Matter of

BARCLAYS BANK PLC
London, England

BARCLAYS BANK PLC
NEW YORK BRANCH
New York, New York

Docket No.    10-165-B-FB
              10-165-B-FBR

Order to Cease and Desist
Issued Upon Consent Pursuant
to the Federal Deposit
Insurance Act, as Amended

WHEREAS, the Board of Governors of the Federal Reserve System (the "Board of

Governors") is the host country supervisor in the United States of Barclays Bank PLC, London,

England ("Barclays"), a foreign bank as defined in Section 1(b)(7) of the International Banking

Act (12 U.S.C. § 3101(7)) and a registered bank holding company, and its New York Branch (the

"New York Branch");

WHEREAS, the New York State Banking Department (the "NYSBD") is the licensing

agency of the New York Branch of Barclays, pursuant to Article II of the New York Banking Law

("NYBL"), and is responsible for the supervision and regulation thereof pursuant to the NYBL;

WHEREAS, the United Kingdom's Financial Services Authority ("FSA"), as the home

country supervisor of Barclays, has agreed to assist the Board of Governors and NYSBD in the

supervision of this Order;

WHEREAS, the United States Department of Justice (the "DOJ"), the District Attorney

for the County of New York, New York ("DANY"), and the Office of Foreign Assets Control of

the United States Department of the Treasury ("OFAC") have been conducting an investigation

into the practices of Barclays concerning the transmission of funds to and from the United States, including through the New York Branch, by and through entities and individuals subject to sanctions regimes imposed under the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §§ 1701-06, and the Trading with the Enemy Act, 50 U.S.C. §§ 5, 16, both of which are administered by OFAC;

WHEREAS, in order to resolve the investigations, Barclays has agreed to enter into settlement agreements with the DOJ, DANY, and OFAC, pursuant to which Barclays will pay an aggregate amount of $290 million;

WHEREAS, the Board of Governors, the NYSBD, and Barclays have the common goal to ensure that Barclays, including the New York Branch, complies with OFAC sanctions and regulations (collectively, "OFAC Regulations") wherever they are applicable within the United States or across jurisdictional borders, that Barclays fosters a strong commitment towards compliance with OFAC Regulations, and that Barclays has adequate OFAC compliance systems that cover in an appropriate manner all activities concerning the United States; and

WHEREAS, the Board of Governors, the NYSBD, Barclays, and the New York Branch have agreed to the issuance of this consent Cease and Desist Order (the "Order") against Barclays and the New York Branch (the "Order");

WHEREAS, the Board of Governors issues this Order pursuant to Section 8(b) of the FDI Act (12 U.S.C. § 1818(b)), and the NYSBD issues this Order pursuant to Section 39 of the NYBL; and

WHEREAS, on _____, 2010, the Executive Board of Barclays at a duly constituted meeting adopted a resolution authorizing and directing _____

2

to enter into this Order on behalf of Barclays and the New York Branch, and consenting to compliance by Barclays and the New York Branch and each of their institution-affiliated parties, as defined in Sections 3(u) and 8(b)(4) of the FDI Act (12 U.S.C. §§1813(u) and 1818(b)(4)), with each and every applicable provision of this Order, and waiving any and all rights that Barclays or the New York Branch may have pursuant to 12 U.S.C. § 1818 or 12 C.F.R. Part 263, or otherwise to: (i) the issuance of a Notice of Charges and of Hearing on any matter set forth in this Order; (ii) a hearing for the purpose of taking evidence of any matters set forth in this Order; (iii) judicial review of this Order; and (iv) challenge or contest, in any manner, the basis, issuance, validity, terms, effectiveness or enforceability of this Order or any provision hereof.

NOW, THEREFORE, before the filing of any notices, or taking of any testimony or adjudication of or finding on any issues of fact or law herein, and without this Order constituting an admission by Barclays or the New York Branch of any allegation made or implied by the Board of Governors or the NYSBD in connection with this matter, and solely for the purpose of settling this matter without a formal proceeding being filed and without the necessity for protracted or extended hearings or testimony, it is hereby ordered that Barclays and the New York Branch shall take affirmative action as follows:

## OFAC Compliance Program

1.    Within 90 days of this Order, Barclays shall submit to the Federal Reserve Bank of New York (the "Reserve Bank") and the NYSBD (collectively, the "Supervisors") an acceptable global OFAC compliance program to ensure Barclays' global compliance with OFAC Regulations (the "OFAC Compliance Program"). The OFAC Compliance Program may include elements from existing or already proposed compliance systems, but, at a minimum, shall include and provide for:

3

(a) An annual assessment of OFAC compliance risks arising from Barclays' business activities and customer base, including risks arising from transaction processing and trade finance activities conducted by or through Barclays' global operations;

(b) policies and procedures to ensure compliance with OFAC Regulations in Barclays' business activities, including screening with respect to transaction processing and trade financing for Barclays' direct and indirect customers;

(c) the establishment of an OFAC compliance reporting system that is widely publicized within the organization and integrated into Barclays' other reporting systems in which employees report known or suspected violations of OFAC Regulations, and that includes a process to ensure that known or suspected OFAC violations are promptly escalated to appropriate compliance personnel for appropriate resolution and reporting;

(d) procedures to ensure that the OFAC Compliance Program is fully integrated into Barclays' overall compliance programs, with adequate staffing and funding;

(e) training for Barclays employees in OFAC-related issues appropriate to the employee's job responsibilities that is provided on an ongoing, periodic basis; and

(f) an audit program designed to test for compliance with OFAC.

2. (a) During the term of this Order, to ensure that the OFAC Compliance Program is functioning effectively to detect, correct, and report OFAC sanction transactions when they occur (the "OFAC Compliance Review"), Barclays shall conduct on an annual basis:

(i) a review of Barclays' OFAC compliance policies and procedures and their implementation, and

(ii) an appropriate risk-focused sampling of U.S. dollar payments.

4

(b)     The OFAC Compliance Review, the first of which shall commence one year after the date of this Order, shall be conducted by an independent consultant acceptable to the Supervisors and the FSA. No later than 30 days before scheduled commencement of the OFAC Compliance Review, Barclays shall submit an engagement letter acceptable to the Supervisors and the FSA that details the independent consultant's scope of work.

(c)     The OFAC Compliance Review shall be conducted in accordance with generally accepted auditing standards and the results of each review shall be submitted to the Supervisors, OFAC, and the FSA within 90 days of the anniversary date of this Order.

3.     Within 60 days of the Supervisors' approval of the OFAC Compliance Program required by paragraph 1, Barclays and the New York Branch shall complete a comprehensive OFAC risk assessment for the New York Branch with particular attention to transactions involving affiliates. A copy of the risk assessment shall be submitted to the Supervisors and the FSA upon its completion.

**Approval, Implementation, and Progress Reports**

4.     (a)     Barclays shall submit a written program and an engagement letter that are acceptable to the Supervisors within the applicable time periods set forth in paragraphs 1 and 2(b) of this Order.

(b)     Within 10 days of approval by the Supervisors, Barclays shall adopt the approved program. Upon adoption, Barclays shall promptly implement the approved program and thereafter fully comply with it.

(c)     During the term of this Order, the approved program and engagement letter shall not be amended or rescinded without the prior written approval of the Supervisors.

5

5.     Within 30 days of the end of each quarter following the date of this Order,

Barclays shall submit to the Supervisors and the FSA written progress reports detailing the form

and manner of all actions taken to secure compliance with the provisions of this Order, and the

results thereof. The Supervisors may, in writing, discontinue the requirement for progress

reports or modify the reporting schedule.

**Communications**

6.     All communications regarding this Order shall be addressed to:

   (a)     Caroline Frawley
           Vice President
           Federal Reserve Bank of New York
           33 Liberty Street
           New York, NY 10045

   (b)     Regina Stone
           Deputy Superintendent
           New York State Banking Department
           One State Street
           New York, New York 10004

   (c)     _____
           Barclays Bank PLC
           _____
           _____
           _____

**Miscellaneous**

7.     The provisions of this Order shall not bar, estop or otherwise prevent the Board of

Governors, the Reserve Bank, the NYSBD, or any other U.S. federal or state agency or

department from taking any other action affecting Barclays, the New York Branch, or any of

their current or former subsidiaries, affiliates, institution-affiliated parties, or their successors and

assigns.

6

8.      Each provision of this Order shall remain effective and enforceable according to the laws of the United States of America, until jointly stayed, modified, terminated, or suspended by the Supervisors.

9.      The provisions of this Order shall be binding on Barclays, the New York Branch, their institution-affiliated parties, and their successors and assigns.

10.     Notwithstanding any provision of this Order, the Reserve Bank and the NYSBD may, in their sole discretion, grant written extensions of time to Barclays and the New York Branch to comply with any provision of this Order.

By order of the Board of Governors of the Federal Reserve System and the New York State Banking Department effective this _____ day of _____ 2010.

BARCLAYS BANK PLC

BOARD OF GOVERNORS OF THE
FEDERAL RESERVE SYSTEM

By:_____
    [Name]
    [Title]

By:_____
    Jennifer J. Johnson
    Secretary of the Board

BARCLAYS BANK PLC
NEW YORK BRANCH

NEW YORK STATE BANKING
DEPARTMENT

By:_____
    [Name]
    [Title]

By:_____
    Regina Stone
    Deputy Superintendent

7

# Tab 4

CONFIDENTIAL BUSINESS INFORMATION
PREDECISIONAL AND DELIBERATIVE
DRAFT DATED JULY 20, 2010

MUL-488066

## SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is made by and between the U.S. Department of the Treasury's Office of Foreign Assets Control and Barclays Bank PLC.

## I.   PARTIES

1.   The Office of Foreign Assets Control ("OFAC") of the U.S. Department of the Treasury administers and enforces economic sanctions against targeted foreign countries, regimes, terrorists, international narcotics traffickers, and persons engaged in activities related to the proliferation of weapons of mass destruction, among others.  OFAC acts under Presidential national emergency authorities, as well as authority granted by specific legislation, to impose controls on transactions and freeze assets under U.S. jurisdiction.

2.   Barclays Bank PLC ("Barclays") is a financial institution registered and organized under the laws of England.  The United Kingdom's Financial Services Authority ("FSA") is Barclays' primary regulator.

## II.   FACTUAL STATEMENT

3.   On May 22, 2006, Barclays voluntarily self-disclosed to the Federal Reserve Bank of New York, the New York State Banking Department (collectively, the "Supervisors"), OFAC and the FSA that Barclays, New York ("Barclays NY") had processed three apparent violations of the Sudanese Sanctions Regulations ("SSR") and one apparent violation of the Cuban Assets Control Regulations ("CACR").  Barclays stated that it had begun an internal investigation into "apparent deficiencies in its filtering mechanism" at its payment processing center in Poole, UK.  Barclays further stated that it had engaged Deloitte & Touche LLP ("Deloitte") and Sullivan & Cromwell LLP ("Sullivan & Cromwell") to conduct a historical transactional review.

4.   Information related to these investigations and provided to OFAC by Barclays and Sullivan & Cromwell revealed a systemic pattern of conduct giving rise to apparent violations of OFAC sanctions involving Burma, Cuba, Iran, and Sudan.

5.   For a number of years up until 2006, Barclays engaged in payment processes that prevented Barclays NY and other U.S. financial institutions from identifying the involvement of U.S. sanctions targets in funds transfers processed through the United States.  In order to prevent Barclays NY and other U.S. financial institutions from identifying and interdicting such

payments, Barclays purposefully used Society for Worldwide Interbank Financial Telecommunication ("SWIFT") payment messages in a manner intended to obscure the identities of OFAC-sanctioned countries and persons, and removed information from SWIFT messages that indicated a sanctioned interest in payments routed through the United States.

6.   Beginning in at least the mid-1980s, in part at the request of its correspondent banking clients that had become or were in countries that had become targets of U.S. sanctions, Barclays circulated special instructions regarding the settlement of transactions that were processed to or through the United States. Starting in 1987, for example, Bank Melli Iran instructed Barclays to process U.S. dollar ("USD") transactions in favor of Bank Melli's London branch by referencing only Bank Melli's account number at Midland Bank PLC without referencing the name of Bank Melli. Bank Melli further instructed Barclays to send separate instructions, which included full transaction details, to Midland Bank PLC and Bank Melli's London Branch. In response, Barclays memorialized these instructions in a memorandum sent by its Head Office to Barclays' international offices, and, as early as the late 1990s, included them in the bank's List of Correspondents ("LOC"), which contained information related to Barclays' correspondent banking relationships and assisted Barclays' employees in effecting international payments. Over time the LOC grew to include instructions for payments related to several of Barclays' correspondent bank clients and included instructions to use cover payments when processing USD payments to the United States, omitting the name of U.S.-sanctions targets from the payment messages so that U.S. financial institutions could not identify the sanctions nexus of the payments.

7.   Barclays also installed an interdiction filter at its payment center in Poole to identify transactions involving U.S.-sanctioned parties. An internal document, which was distributed to Barclays' personnel and managers in several units within the bank, instructed employees at the Poole payment processing center to notify the bank's business areas by fax of cancelled payments after a payment was stopped by the filter. The original fax template used by the Poole Control Center to notify the originating unit within Barclays of cancelled payments allowed the sender to indicate that a SWIFT message had been rejected as an "OFAC ITEM," explaining:

> Wording below is contained in the message and does not comply with the Office of Foreign Assets Control regulations applicable to all payments sent via the U.S.A. Payments to U.S.A. must NOT contain the word listed below.

The relevant business unit would then "decide whether to re-input the message without the offending text… or to fully cancel the payment order…" The then-Senior Manager, Barclays Group Payments Industry Management, in Poole explained in an interview that if the MT202 contained beneficiary information that caused it to be stopped by the OFAC filter in the UK, that information was removed to ensure the payment was not stopped by the OFAC filter when resubmitted. The same employee later noted that he was aware that payment operators amended payment messages in order to facilitate U.S. dollar payments to OFAC-sanctioned countries and that this was a 'common practice' in the Bank.

8.     In addition, a supervisor with Barclays' payment processing center also sometimes instructed payment operators to process payments involving sanctioned persons through a Barclays sundry account.  This practice resulted in certain instances in which on outgoing payments field 52 (ordering institution) was populated with Barclays' sundry account information, making it appear as though Barclays was the remitting bank.

9.     Barclays failed to heed concerns raised by employees at least as early as 2001, when the then-Compliance Director, Business Banking sent a memorandum regarding the LOC to the then-Head of Group Compliance, copying the then-Governance Director of Corporate Banking, which stated:

> For Iran and Libya the published internal procedures include directions to make transfers in US dollars which circumvent constraints and breach OFAC sanctions.  Instructions for Iraq and Cuba are less prescriptive but would nevertheless constitute a 'work around.'...Substantial reputational damage could be focused on the Group should these procedures reach the public domain.

Another employee raised similar concerns to a then-Managing Director within Barclays citing a then-recent Operational Risk Assessment:

> To ci[r]cumvent US legislation, [Transaction Processing] currently route US$ items for sanctioned institutions via unnamed account numbers, without mention of the sanctioned party.  For customer transfers, payment cover is routed via MT202 to New York naming only the account holding bank… This could lead to severe regulatory censure by the US Treasury.

10.    A January 2004 report to the Group Risk Oversight Committee noted that a recent failure "illustrat[ed] why the whole sanctions process needs to be reviewed and brought up to date."  A July 2004 assessment of Barclays' payments processing, which was distributed to various personnel within Barclays, including to the then-Head of the Poole Payments Centre, noted: "Cover payments are an issue for this project as they are effectively a way of by passing sanctions…"  Although Barclays later adopted a revised Group Sanctions Policy, the then-Chief Operating Officer conceded that Barclays had failed to develop a clear sanctions policy with detailed project plans in place for every business in every country until the beginning of 2006.

11.    OFAC has reason to believe that Barclays' conduct resulted in transactions prohibited by Executive Orders and/or regulations promulgated pursuant to the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §§ 1701-06, and the Trading With the Enemy Act ("TWEA"), 50 U.S.C. App. §§ 1-44.

12.    From on or about July 29, 2003, to on or about May 31, 2006, Barclays processed 46 electronic funds transfers, in the aggregate amount of USD 490,549.85, through financial institutions located in the United States, in some cases to the benefit of persons listed in the Annex to Executive Order 13310 of July 28, 2003 ("E.O. 13310"), in apparent violation of the prohibitions against (i) "the exportation or re-exportation of financial services to Burma, directly or indirectly, from the United States…," 31 C.F.R. § 537.202, and/or (ii) dealing in property and

interests in property that "come within the United States" of persons listed in the Annex to E.O. 13310, 31 C.F.R. § 537.201.

13.    From on or about October 10, 2002, to on or about November 16, 2005, Barclays processed a total of 61 electronic funds transfers in which the Government of Cuba or a Cuban national had an interest, in the aggregate amount of USD 6,711,798.95, through financial institutions located in the United States in apparent violation of the prohibition against "[a]ll transfers of credit and all payments between, by, through, or to any banking institution or banking institutions wheresoever located, with respect to any property subject to the jurisdiction of the United States," 31 C.F.R. § 515.201(a).

14.    From on or about August 30, 2002, to on or about December 14, 2004, Barclays processed three electronic funds transfers, in the aggregate amount of USD 60,062.41, through financial institutions located in the United States to the benefit of the Government of Iran and/or persons in Iran, including various Iranian financial institutions, in apparent violation of the prohibition against the "exportation, … directly or indirectly, from the United States, … of any … services to Iran or the Government of Iran," 31 C.F.R. § 560.204.

15.    From on or about August 6, 2002, to on or about September 27, 2006, Barclays processed a total of 1,175 electronic funds transfers and trade finance transactions in the aggregate amount of USD 105,432,102.00, to the benefit of the Government of Sudan and/or persons in Sudan, through financial institutions located in the United States in apparent violation of the prohibitions against (i) the "exportation or re-exportation, directly or indirectly, to Sudan of…services from the United States," 31 C.F.R. § 538.205, and/or (ii) dealing in property and interests in property of the Government of Sudan that "come within the United States," 31 C.F.R. § 538.201.

16.    The apparent violations described above were voluntarily self-disclosed to OFAC within the meaning of OFAC's Economic Sanctions Enforcement Guidelines (the "Guidelines"). *See* 74 Fed. Reg. 57,593 (Nov. 9, 2009).

17.    The apparent violations by Barclays described above undermined U.S. national security, foreign policy, and other objectives of U.S. sanctions programs.

18.    Upon discovering the apparent violations, Barclays took prompt and thorough remedial action through extensive, global measures, including implementing a sanctions policy that broadly prohibits USD transactions with OFAC-sanctioned countries; implementing a revised and enhanced sanctions policy for all of the bank's business areas; and developing a Group-wide comprehensive training program, which is reviewed by internal and external counsel, specifically designed to provide targeted training according to staff function and role. Barclays also provided cooperation to OFAC by conducting an extensive look-back to identify weaknesses in its compliance program and providing well-organized information regarding the apparent violations in a timely fashion.

19.    OFAC had not issued a penalty notice or Finding of Violation against Barclays in the five years preceding the apparent violations.

### III.   TERMS OF SETTLEMENT

IT IS HEREBY AGREED by OFAC and Barclays that:

20.    Barclays has terminated the conduct described in paragraphs 3 through 15 above and has put in place, and agrees to maintain, policies and procedures that prohibit, and are designed to minimize the risk of the recurrence of, similar conduct in the future

21.    On an annual basis, for a period of two years from the date of this Agreement, Barclays shall conduct a review of its policies and procedures and their implementation, and an appropriate risk-focused sampling of USD payments, to ensure that its OFAC compliance program is functioning effectively to detect, correct, and report OFAC-sanctioned transactions when they occur.  The review, the first of which shall commence one year after the date of this Agreement shall be conducted by an independent consultant acceptable to the Supervisors and the FSA.  No later than 30 days before scheduled commencement of the review, Barclays shall submit an engagement letter acceptable to the Supervisors and the FSA that details the independent consultant's scope of work.  The review will be conducted in accordance with generally accepted auditing standards and the results of each review will be submitted to OFAC, the Supervisors, and the FSA within 90 days of the first and second anniversary dates of this Agreement.

22.    Without this Agreement constituting an admission or denial by Barclays of any allegation made or implied by OFAC in connection with this matter, and solely for the purpose of settling this matter without a final agency finding that a violation has occurred, Barclays agrees to a settlement in the amount USD 176,000,000 arising out of the alleged violations of IEEPA, TWEA, the Executive Orders and the Regulations referenced in this Agreement. Barclays' obligation to pay such settlement amount to OFAC shall be satisfied by its payment of a greater amount in satisfaction of penalties assessed by U.S. federal, state, or county officials arising out of the same pattern of conduct.

23.    Should OFAC determine, in the reasonable exercise of its discretion, that Barclays has breached its obligations under paragraphs 21 or 22 of this Agreement, OFAC shall provide written notice to Barclays of the alleged breach and provide Barclays with 30 days from the date of Barclays' receipt of such notice, or longer as determined by OFAC, to demonstrate that no breach has occurred or that any breach has been cured.  In the event that OFAC ultimately determines that a breach of this Agreement has occurred, OFAC will provide notice to Barclays of its determination, and this Agreement shall be null and void, and the statute of limitations applying to activity occurring on or after August 1, 2002, shall be deemed tolled until a date 90 days following Barclays' receipt of notice of OFAC's determination that a breach of the Agreement has occurred.

24.    OFAC agrees that, as of the date that Barclays satisfies the obligations set forth in paragraphs 21 through 22 above, OFAC will release and forever discharge Barclays from any and all civil liability, under the legal authorities that OFAC administers, in connection with any and all

**Barclays Bank PLC – DRAFT DATED JULY 20, 2010**

violations arising from or related to the conduct disclosed during the course of the investigation, including that described in paragraphs 3 through 11 above and the alleged violations described in paragraphs 12-15 above.

25.     Barclays waives any claim by or on behalf of Barclays, whether asserted or unasserted, against OFAC, the U.S. Department of the Treasury, and/or its officials and employees arising out of the facts giving rise to this Agreement, including but not limited to OFAC's investigation of the apparent violations and any possible legal objection to this Agreement at any future date.

## IV.     MISCELLANEOUS PROVISIONS

26.     The provisions of this Agreement shall not bar, estop, or otherwise prevent OFAC from taking any other action affecting Barclays with respect to any and all violations not arising from or related to the conduct described in paragraphs 3 through 15 above or violations occurring after the date of this Agreement.  The provisions of this Agreement shall not bar, estop, or otherwise prevent other U.S. federal, state, or county officials from taking any other action affecting Barclays.

27.     Each provision of this Agreement shall remain effective and enforceable according to the laws of the United States of America until stayed, modified, terminated, or suspended by OFAC.

28.     No amendment to the provisions of this Agreement shall be effective unless executed in writing by OFAC and by Barclays.

29.     The provisions of this Agreement shall be binding on Barclays and its successors and assigns.

30.     No representations, either oral or written, except those provisions as set forth herein, were made to induce any of the parties to agree to the provisions as set forth herein.

31.     This Agreement consists of 7 pages and expresses the complete understanding of OFAC and Barclays regarding resolution of the alleged violations arising from or related to the conduct described in paragraphs 3 through 15 above.  No other agreements, oral or written, exist between OFAC and Barclays regarding resolution of this matter.

32.     OFAC, in its sole discretion, may post on OFAC's website this entire Agreement or the facts set forth in paragraphs 3 through 15 of this Agreement, including the identity of any entity involved, the satisfied settlement amount, and a brief description of the alleged violations. OFAC also may issue a press release including this information.

33.     Use of facsimile signatures shall not delay the approval and implementation of the terms of this Agreement.  In the event any party to this Agreement provides a facsimile signature, the party shall substitute the facsimile with an original signature.  The Agreement may

be signed in multiple counterparts, which together shall constitute the Agreement.  The effective date of the Agreement shall be the latest date of execution.

34.    All communications regarding this Agreement shall be addressed to:

Ori Lev
Associate Director, Office of Enforcement
Office of Foreign Assets Control
U.S. Department of the Treasury
1500 Pennsylvania Ave., N.W., Annex
Washington, D.C.  20220

Group General Counsel
Barclays Bank PLC
1 Churchill Place
London, England E14 5HP

**AGREED:**

_____
Signature

_____
Printed name of Barclays'
Duly Authorized Representative

_____
Printed title of Barclays'
Duly Authorized Representative

DATED: _____

_____
Adam J. Szubin
Director
Office of Foreign Assets Control

DATED: _____