UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| v. | ) No. 10-CR-218 (EGS) |
| BARCLAYS BANK PLC, | ) |
| Defendant. | ) |

## STATUS REPORT OF BARCLAYS BANK PLC

Defendant Barclays Bank PLC ("Barclays" or "the Bank") respectfully submits this status report regarding its compliance with its obligations under the Deferred Prosecution Agreement, dated August 16, 2010, entered into between Barclays and the United States (the "DPA").

During the term of the DPA, Barclays has been in regular communication with the United States regarding its compliance with its obligations under the DPA. As explained below, Barclays believes it is in full compliance with all of those obligations. This report addresses each of its obligations in turn.

**1.    Paragraph 3**

Paragraph 3 of the DPA provides that "Barclays shall pay [$149 million] within three (3) business days from Court approval of this Agreement pursuant to payment instructions as directed by the United States. . . ."

On August 19, 2010, Barclays paid $149 million to the United States, and made a payment of the same amount to the State of New York.

2. **Paragraph 6(a)**

Paragraph 6(a) of the DPA provides that "[b]y August 6, 2011, Barclays' Head of Compliance and Regulatory Affairs must certify that comprehensive training on Barclays policy regarding U.N., U.S., and E.U. sanctions has been completed by all employees who are: (1) involved in the processing or investigation of United States Dollar ("USD") payments and their direct or indirect supervisors; (2) involved in execution of USD-denominated securities trading orders and their direct or indirect supervisors; and (3) U.S. citizens located outside the United States who are involved in transactions or business activities involving cross-border payments[.]"

Although this obligation has not yet matured, Barclays has made progress toward its completion, and it expects that it will be in a position to make the required certification by August 6, 2011. Since 2007, Barclays has delivered annual firm-wide sanctions compliance training tailored to the roles of its staff. In consultation with its external advisors, the Bank has commenced a review of its existing sanctions training materials and is in the process of updating the content of these materials. Barclays is also developing an operational training plan to ensure that the employees listed in the DPA receive the updated sanctions compliance training. The majority of the training is expected to take place in the first quarter of 2011. Barclays will then perform a checking exercise to ensure that training has been completed by required personnel in advance of the August 6, 2011 deadline for certification.

3. **Paragraph 6(b)**

Paragraph 6(b) of the DPA provides that "[b]y August 30, 2010, Barclays Head of Compliance and Regulatory Affairs must further certify that Barclays has

implemented a written policy to require the use of the Society for Worldwide Interbank Financial Telecommunications ("SWIFT") Message Type ("MT") 202COV bank-to-bank payment message where appropriate under SWIFT guidelines[.]"

Barclays began using the SWIFT MT202COV when it was introduced to the industry by SWIFT in 2009. It has committed that practice to a written policy, and, on August 30, 2010, timely certified to the United States (by letter dated August 27, 2010) that it had in place a policy to use the MT202COV where appropriate under SWIFT Guidelines.

4. **Paragraph 6(c)**

Paragraph 6(c) of the DPA provides that "Barclays must maintain the electronic database of SWIFT MT payment messages and other internal Barclays documents, collected and maintained by Barclays external counsel in connection with Barclays' investigation into this matter, relating to USD payments processed during the period from 2000 through June 30, 2007 in electronic format for a period of five years from the execution of this Agreement[.]"

Barclays is maintaining the electronic databases as required.

5. **Paragraph 6(d)**

Paragraph 6(d) of the DPA provides that "Barclays must completely and truthfully disclose to the United States all information and materials in its possession, custody, or control relating to any transaction within the scope of or relating to the Factual Statement that the United States or its Designated Agency may request, including, but not limited to, all information about the activities of Barclays present and

former directors, officers, employees, consultants, representatives, agents, subsidiary entities, minority-owned entities, and affiliated entities[.]"

The Bank has complied with all requests received from the United States and the District Attorney of New York County for information and materials.

**6.     Paragraph 6(e)**

Paragraph 6(e) of the DPA provides that "Barclays must assemble, organize, translate, and provide, in a responsive and prompt fashion, all information and materials in the possession, custody, or control of Barclays relating to any transaction within the scope of or relating to the Factual Statement as may be requested by the United States[.]"

The Bank has complied with all requests received from the United States and the District Attorney of New York County for information and materials.

**7.     Paragraph 6(f)**

Paragraph 6(f) of the DPA provides that "Barclays must use its good faith efforts to make available, at its cost, Barclays' and its successors' current and former directors, officers, employees, consultants, representatives, and agents, to provide information and materials, and to testify as requested by the United States, including sworn testimony before a grand jury or in any judicial proceeding, and interviews with the United States and Designated Agencies relating to any transaction within the scope of or relating to the Factual Statement[.]"

To date, the Bank has received no requests for such witnesses to be made available.

**8.     Paragraph 6(g)**

Paragraph 6(g) provides that "Barclays must provide information, materials, and testimony as necessary or requested to identify or establish the original location, authenticity, or other basis for admission into evidence of documents or physical evidence in any criminal or judicial proceeding[.]"

To date, the Bank has received no requests for such information, materials, or testimony.

**9.     Paragraph 6(h)**

Paragraph 6(h) of the DPA provides that "Barclays must implement compliance procedures and training designed to ensure that the Barclays compliance officer in charge of sanctions is made aware, in a timely manner, of any known requests or attempts by any entity (including, but not limited to, Barclays' customers, financial institutions, companies, organizations, groups, or persons) to withhold or alter its name or other identifying information where the request or attempt appears to be related to circumventing or evading U.S. sanctions laws.  Barclays' Head of Compliance and Regulatory Affairs, or his or her designee, shall report to the United States the name and contact information of any entity that makes such a request[.]"

Since 2006, Barclays Group Sanctions Policy has required that any employee who becomes aware that a customer has attempted to withhold or alter its name or other identifying information to circumvent or evade U.S. sanctions laws report this to his or her Business Unit Money Laundering Reporting Officer.

To comply with the specific requirement in the DPA that requests or attempts by any entity be timely reported to the compliance officer in charge of sanctions

and reported to the United States, Barclays has included in its November 2010 "Group Sanctions Compliance Programme," which has been submitted to its regulators for approval, a requirement that Money Laundering Reporting Officers in its various business units report any such incidents to the Group Money Laundering Reporting Officer (the "Group MLRO"), who is designated as the Barclays compliance officer in charge of sanctions. The Group MLRO has been designated by Barclays' Head of Compliance and Regulatory Affairs as the person responsible for ensuring such matters are reported to the United States. These requirements will also be set out explicitly in the updated training program required by paragraph 6(a) of the DPA.

Pending regulatory approval and implementation of the "Group Sanctions Compliance Programme," and implementation of the updated training program, Barclays' Group MLRO has affirmatively contacted the Money Laundering Reporting Officers in the Bank's various business units to ensure that any such requests or attempts that have been identified are properly reported.

Since the entry of the DPA, Barclays has identified three instances of customer behavior that it believes have triggered this reporting obligation. In each case, Barclays identified and prevented relevant transactions from going forward, and it reported the transactions and relevant customer contact information to the United States. As of the date of this report, Barclays and its advisors are in the process of reviewing additional transactions that may also be reportable under this provision. Barclays has advised the United States of the existence of these additional potential reports.

**10.    Paragraph 6(i)**

Paragraph 6(i) of the DPA provides that "Barclays must abide by any and all orders and regulations regarding remedial measures or other required actions related to this matter issued by either (1) the Board of Governors of the Federal Reserve System or (2) the Office of Foreign Assets Control of the United States Department of the Treasury[.]"

Barclays has had regular meetings with its U.S. and U.K. regulators in accordance with the Cease and Desist Order issued by the Federal Reserve in connection with this matter, and the Bank believes it is meeting all of its obligations under its regulatory agreements. On October 29, 2010, Barclays submitted its first quarterly progress report to its regulators in accordance with paragraph 5 of the Cease and Desist Order. On November 12, 2010, Barclays timely submitted its proposed OFAC Compliance Program to its regulators for approval, in accordance with paragraph 1 of the Cease and Desist Order.

Barclays' agreement with the Office of Foreign Assets Control ("OFAC") provides that Barclays (1) "agrees to maintain, policies and procedures that prohibit, and are designed to minimize the risk of recurrence of, similar conduct in the future"; and (2) "on an annual basis, for a period of two years from the date of this Agreement, Barclays shall conduct a review of its policies and procedures and their implementation, and an appropriate risk-focused sampling of USD payments, to ensure that its OFAC compliance program is functioning effectively. . . ."

Barclays believes it currently maintains a comprehensive program designed to ensure its compliance with applicable economic sanctions laws and

regulations. As noted, Barclays has also submitted to its regulators for approval its November 2010 "Group Sanctions Compliance Programme." It plans to review its OFAC compliance program as required in August 2011 and August 2012.

**11.    Paragraph 6(j)**

Paragraph 6(j) of the DPA provides that "Barclays must provide certification by Barclays' Head of Compliance and Regulatory Affairs twenty-one (21) months from execution of this Agreement that he or she (1) has reviewed the foregoing commitments contained in Paragraph 6 of this Agreement; (2) has made inquiries with relevant Barclays personnel, including the responsible heads of internal audit and operations; and (3) based on those inquiries, can attest that Barclays has, to the best of such officer's ability to determine, complied with the commitments contained in Paragraph 6 of this Agreement[.]"

While this obligation has not yet matured, Barclays expects to be in a position to make the certification at the required time.

**12.    Paragraph 6(k)**

Paragraph 6(k) of the DPA provides that "Barclays must, to the extent that a United States request requires transmittal through formal government channels, use its best efforts to facilitate such transmittal and agree not to oppose any request made in accordance with applicable law either publicly or privately. Nothing in this Agreement shall be construed to require Barclays to produce any documents, records or tangible evidence that are protected by the attorney-client privilege or work-product doctrine of the United Kingdom or other applicable confidentiality, criminal, or data protection laws."

To date, the Bank has received no requests for information or materials that require transmittal through formal government channels.

**13.    Paragraph 10**

Paragraph 10 of the DPA provides that Barclays may be subject to prosecution "[i]f the United States determines during the term of this Agreement that Barclays has committed any federal crime after the execution of this Agreement."

Barclays is aware of no determination by the United States that it has committed any federal crime during the term of the DPA.

**14.    Paragraph 12**

Paragraph 12 of the DPA provides that "Barclays expressly agrees that it shall not, through its attorneys, board of directors, agents, officers, employees, consultants, contractors, subcontractors, or representatives, including any person or entity controlled by any of them, make any public statement contradicting, excusing, or justifying any statement of fact contained in the Factual Statement" of the DPA.

Barclays is aware of no such statement.

Dated:   November 18, 2010
         Washington, D.C.

                                    Respectfully submitted,


                                    By:    /s/ Bruce W. Hickey
                                           Bruce W. Hickey (D.C. Bar No. 479036)
                                           SULLIVAN & CROMWELL LLP
                                           1701 Pennsylvania Avenue, N.W.
                                           Washington, D.C.  20006
                                           Telephone: (202) 956-7055
                                           Facsimile: (202) 956-7022

                                           David H. Braff (admitted *pro hac vice*)
                                           SULLIVAN & CROMWELL LLP
                                           125 Broad Street
                                           New York, N.Y.  10004
                                           Telephone: (212) 558-4705
                                           Facsimile: (212) 291-9015

                                           Steven R. Peikin (admitted *pro hac vice*)
                                           SULLIVAN & CROMWELL LLP
                                           125 Broad Street
                                           New York, N.Y.  10004
                                           Telephone: (212) 558-7228
                                           Facsimile: (212) 291-9112

                                           *Counsel for Defendant Barclays Bank PLC*