```
                      UNITED STATES DISTRICT COURT
                      FOR THE DISTRICT OF COLUMBIA
      --------------------------X
      UNITED STATES OF AMERICA,       Docket No. CR 10-218
                      Plaintiff,
              v.                      Washington, D.C.
                                      November 23, 2010
                                      12:50 p.m.
      BARCLAYS BANK, PLC,
                      Defendant.
      --------------------------X
```

**STATUS HEARING**
*BEFORE THE HONORABLE EMMET G. SULLIVAN*
*UNITED STATES DISTRICT JUDGE*

APPEARANCES:

For the Plaintiff:    U.S. DEPARTMENT OF JUSTICE, Asset
                       Forfeiture & Money Laundering Section
                      By:  Mr. Kevin B. Gerrity
                           Mr. Jaikumar Ramaswamy
                      1400 New York Avenue, N.W.
                      Suite 10100
                      Washington, D.C.  20135
                      202.353.8915
                      *kevin.gerrity@usdoj.gov*
                      *jaikumar.ramaswamy@usdoj.gov*

For the Defendant:    SULLIVAN & CROMWELL, LLP
                      By:  Mr. David H. Braff
                           Mr. Steven Peikin
                      125 Broad Street
                      New York, NY  10004
                      212.558.4705
                      *braffd@sullcrom.com*
                      *peikins@sullcrom.com*

ALSO PRESENT:
BARCLAYS' CORP. REP:  Mr. Mark Harding

BARCLAYS' COMPLIANCE: Mr. Nick Curle

Court Reporter:       Catalina Kerr, RPR, CRR
                      U.S. District Courthouse
                      Room 6509
                      Washington, D.C.  20001
                      202.354.3258
                      *catykerr@msn.com*

Proceedings recorded by mechanical stenography, transcript produced by computer.

```
 1                        P-R-O-C-E-E-D-I-N-G-S
 2              (12:50 P.M.; OPEN COURT; DEFENDANT PRESENT WITH HIS
 3    ATTORNEYS.)
 4              THE DEPUTY CLERK:  Please remain seated and come to
 5    order.  Criminal Case 10-218, United States versus Barclays
 6    Bank, PLC.  Would you please identify yourselves for the
 7    record.
 8              MR. GERRITY:  Good afternoon, Your Honor.  Kevin
 9    Gerrity for the Government, and I have at table with me is Jay
10    Ramaswamy who is my principal deputy.
11              THE COURT:  All right.  Good afternoon, counsel.
12              MR. PEIKIN:  Good afternoon, Your Honor.  Steven
13    Peikin for the Bank.
14              THE COURT:  And do you have colleagues with you?
15              MR. PEIKIN:  Yes.  Seated is my colleague David
16    Braff from my law firm.  Mark Harding, the general counsel of
17    Barclays who I think you met before.  Seated next to
18    Mr. Harding is Nick Curle.  Mr. Curle is from Barclays'
19    compliance.
20              THE COURT:  All right.  Good afternoon.
21              All right.  I'll hear from Government counsel.
22    Thank you for your respective reports, been very helpful.  You
23    want to recap what's going on?
24              MR. GERRITY:  Yes, Your Honor.  At this point the
25    Court had asked for a status conference to go over the -- how
```

1   Barclays has done in regards to DPA.  At this point it's three
2   months since you -- we had put in the order and request the
3   order to have the DPA approved, which the Court had approved.
4   And this is the opportunity for the Court to see how Barclays
5   has progressed today.
6           To date, from the Government's perspective, Barclays
7   has been in compliance with all the terms and conditions of
8   the DPA, although I will tell the Court that it's a
9   three-month period, the DPA is for two years, so there's a lot
10  of things that have not ripened into actual maturity for
11  actions of some compliance of certifications.
12          One thing, and I would like to talk about, Your
13  Honor, is --
14          THE COURT:  You did make -- they haven't made
15  reference to some requirements imposed by the DPA have not yet
16  come due for production; is that correct?
17          MR. GERRITY:  That is correct.  There's a couple.
18  There's some that have and there's some that haven't.  If it
19  pleases the Court, I can walk through very -- just an
20  overview.
21          THE COURT:  Sure.  Go ahead.
22          MR. GERRITY:  There's three more areas --
23          COURT REPORTER:  Would you slow down, please.
24          MR. GERRITY:  I know, I'm sorry.  I did it again.
25  I'll slow down.

1          The first one is the Government monitoring, and this
2   is something that the Court in August we spoke about between
3   the Federal Reserve, the OFAC, and the Department of Justice,
4   as well as the New York State Banking Department and the
5   Financial Services Authority who is the UK equivalent of the
6   fed and the regulators of the banking industry, are all
7   working together, in a sense, as a monitor to oversee how
8   Barclays is doing in compliance with the cease and desist
9   order that the fed has put in place with OFAC settlement
10  agreement as well as with the DPA that this court has
11  approved.
12         The next is milestone sedate, and just walking
13  through some of the current milestones that have been met, as
14  I said, there's still a lot more to look at, but at first, the
15  Bank has provided certification that they are now using what's
16  called an MT202 cover payment method, and all that means is
17  that their payment methods are more transparent so you can
18  actually see beneficiary information on certain bank-to-bank
19  transfers, and that's a big concern for the Court and for the
20  Government is that that is out there and that they are more
21  transparent in the way that business is being done.
22         In regards to -- and they also paid the forfeiture
23  on time.  Third, is they put together a package for the
24  Federal Reserve in a timely manner showing the Federal Reserve
25  what their policies and procedures are going to be in place.

1   And to just outline for the Court, they had to do that within
2   three months, so they did that.  The fed is now reviewing
3   that, and after the fed reviews that, the fed will approve or
4   make changes and send them back and that will be approved, and
5   when that's approved, then Barclays will have an opportunity
6   to implement those policies and procedures, and the fed has in
7   place at a year from -- so in August of 2011, they will have
8   an independent auditor who will review how Barclays is doing
9   and the fed will receive that report and be able to continue
10  monitoring.
11          The fed also has in place a quarterly review where
12  there will be progress reports by Barclays on a quarterly
13  timetable.  At this time, though, you know, the timetables are
14  not very ripe.  They produced what they need to produce in
15  regards to policies and procedures, but there still is now
16  walking into the approval and then implementation phase for
17  that.
18          Also, in regards to just an ongoing compliance, the
19  Government has been in touch and consulted with Bank counsel
20  frequently in regards to how the Bank is doing and are they
21  meeting their deadlines and moving forward.  We've also
22  discussed with law enforcement -- one of the provisions in the
23  DPA is the Bank does not violate any federal laws, so we have
24  to talk with our law enforcement brethren and ask them, is
25  there any information that would show that Barclays was not in

```
 1  compliance with DPA, and that has come back negative.
 2           We've also spoken, as you saw in our pleadings, with
 3  OFAC and with the fed and they have said there's nothing today
 4  that would indicate that Barclays is in or deficient with the
 5  DPA.
 6           Finally, another area was Barclays, in accordance
 7  with the DPA, can't put anything on the public that
 8  countermands the factual statement or anything in the DPA, and
 9  we've done searches for that and looked to see independently
10  if there is anything that Barclays has done, and to date, we
11  have not seen anything.
12           So, at this point, walking through it, it's again
13  preliminary, but so far Barclays has met everything that they
14  needed to do in the timetable of the three months today.
15           THE COURT:  Would it make more sense to schedule the
16  next status hearing for six months out?
17           MR. GERRITY:  Your Honor, and I would -- the next
18  big milestone is going to be approximately in August of next
19  year, which is a little bit longer, is when they have to
20  submit papers to the Federal Reserve.  The Federal Reserve
21  then is going to have 90 days to review, so it may be about a
22  year from today.
23           It might make the most sense to the Court, but
24  certainly if the Court pleases, we'd be more than happy to
25  come back and update you in six months, but I respectfully
```

1  would say probably a year from today might be the best time.
2              THE COURT:  All right.  All right.  Thank you.
3              Would you like to add to what counsel said?
4              MR. PEIKIN:  No, Your Honor, unless you have
5  questions, I'm happy to answer them.
6              THE COURT:  All right.  Is the Government treating
7  you fairly?
8              MR. PEIKIN:  The Government is treating us fairly,
9  but they have been rigorously monitoring our compliance.
10             THE COURT:  Sounds like the rigor is going to get
11 more intensive as well.
12             MR. PEIKIN:  As those milestones come due, I expect
13 there'll be more scrutiny as we have more things to complete.
14             THE COURT:  What about the next status hearing,
15 should it be a year from today or should it be sooner?
16             MR. PEIKIN:  Judge, I think a year makes sense.
17 We're certainly happy to come back sooner if the Court wants,
18 but I agree for the reasons that Mr. Gerrity stated that a
19 year is probably the most sensible thing because some of these
20 things come up --
21             THE COURT:  What's going to be -- August is a
22 central month?  August is a critical month, is that right,
23 next August?
24             MR. GERRITY:  Your Honor, August is a critical month
25 in the sense that that is the next timeline where they are

```
 1   going to be producing information to the Federal Reserve,
 2   although --
 3            THE COURT:  And not -- and not prior to that?
 4            MR. GERRITY:  No.  So, after August, I mean, the
 5   Federal Reserve is going to take a little bit of time to
 6   review some of that data, so it may take a little bit --
 7   that's why I was saying November might be the best time next
 8   year.
 9            THE COURT:  Well, then maybe it makes sense to
10   schedule a status hearing a year -- maybe just a year from now
11   then.  I mean, for want of a better date, Carol, I don't know,
12   November the 22nd, 23rd or so?
13            THE DEPUTY CLERK:  We can schedule it on Wednesday
14   the 23rd.
15            THE COURT:  Let's make it the 22nd of November,
16   Tuesday at noon.  That will be a status hearing before the
17   Court, and I will direct -- and listen carefully.  I will
18   direct that a status report be filed by no later than the
19   week -- a week before would be fine, the 15th, November the
20   15th.  I will read the status report and there will be a
21   status before the Court on November the 22nd at noon.
22            Is that a bad date or bad time for anyone?
23            MR. GERRITY:  No, Your Honor.
24            THE COURT:  All right.  And the Government's
25   satisfied with what has taken place then since -- I mean, I
```

1    recognize it's only been 90 days or so, but you're satisfied
2    that --
3            MR. GERRITY:  Yes, Your Honor.
4            THE COURT:  -- with what has been accomplished on
5    the previous 90 days then?
6            MR. GERRITY:  Yes, Your Honor.
7            THE COURT:  No concerns?
8            MR. GERRITY:  At this date, there are no concerns at
9    all.  And like I said, the other Government entities who are
10   involved also do not have concerns.
11           THE COURT:  All right.  All right.  Is that date
12   bad?
13           MR. PEIKIN:  That's fine, Your Honor.  Do you
14   require just counsel or do you want --
15           THE COURT:  I think just counsel.  I'm not going to
16   require -- What's the Government's preference in that regard?
17   Do you want Mr. Harding present for that?
18           MR. GERRITY:  Your Honor, I think counsel would be
19   appropriate for that.
20           THE COURT:  All right.  As long as he's available,
21   as long as -- I mean, if there's a question that comes up that
22   requires his expertise or requires him to give an answer, as
23   long as he's available, we can reach him by phone or so.
24           MR. GERRITY:  And Your Honor, if there was some
25   reason that the Government feels that he should be, we'll

```
 1  certainly advise the Court as soon as possible.
 2          THE COURT:  Absolutely.
 3          MR. GERRITY:  But I don't foresee that as being an
 4  issue, but if it is, we will certainly advise you of that.
 5          THE COURT: All right.  That's fine.  All right.
 6  Thank you.
 7          MR. GERRITY:  Thank you.  Happy Thanksgiving.
 8          THE COURT:  All right.  Likewise.  Parties are
 9  excused.  Thank you.
10          MR. PEIKIN:  Thank you, Your Honor.
11          (PROCEEDINGS END AT 1:00 P.M.)
12                       *-*-*-*
```

### CERTIFICATE OF REPORTER

I, Catalina Kerr, certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

_____  _____
Catalina Kerr                         Date